UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
Lafayette Division

| | |
|---|---|
| IN RE: | CASE NO. 16-50740 |
| PROGRESSIVE ACUTE CARE, LLC, et al. | CHAPTER 11 |
| DEBTORS | JOINTLY ADMINISTERED |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS
TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL
<u>VENDORS IN THE ORDINARY COURSE OF BUSINESS</u>**

**NOW INTO COURT**, through undersigned counsel, come Progressive Acute Care, LLC ("PAC"), Progressive Acute Care Avoyelles, LLC ("PAC Avoyelles"), Progressive Acute Care Oakdale, LLC ("PAC Oakdale") and Progressive Acute Care Winn, LLC ("PAC Winn") as debtors and debtors-in-possession (collectively, the "Debtors"), which respectfully move this Court for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to pay pre-petition claims of certain critical vendors in the ordinary course of business and, in support thereof, respectfully represent:

**<u>Jurisdiction</u>**

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

**<u>Basis for Relief</u>**

2.

The statutory predicates for the relief requested herein are sections 105(a), 363(c), 1107(a) and 1108 of the Bankruptcy Code.

1

**Background**

3.

On May 31, 2016 (the "Petition Date"), the Debtors each filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code. The Debtors continue to operate their businesses and manage their properties as a debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in this Bankruptcy Case.

The Debtors own and operate three (3) community-based hospitals ("Hospitals"), which provide inpatient, outpatient and emergency care, primarily for residents of the immediate regions of the Hospitals. The Hospitals are located in Marksville (PAC Avoyelles), Oakdale (PAC Oakdale) and Winnfield (PAC Winn).

**Relief Requested**

4.

By this Motion, the Debtors seek entry of an order that authorizes, but does not obligate, the Debtors to pay, in the ordinary course of their businesses, certain prepetition claims owing to third parties that are essential to the uninterrupted function of the Debtors' business operations (the "Critical Vendors"). The Critical Vendors include creditors that provide materials and services and are necessary and critical to the continued operations of the Debtors. The Critical Vendors and the prepetition amounts owed to each such Critical Vendor are listed on Exhibit "A" attached hereto and incorporated herein by reference.

5.

Specifically, the Debtors seek authorization under sections 105(a) and 363 to satisfy the prepetition claims of the Critical Vendors where feasible and when, in the Debtors' business judgment, it is warranted. As a condition to receiving payment, when so required by the Debtors,

the Critical Vendors must agree to provide postpetition goods and/or services to the Debtors on terms acceptable to the Debtors.

**Law and Argument**

6.

As a result of the commencement of these chapter 11 cases, the Debtors believe that the Critical Vendors will refuse to continue providing goods and/or services to the Debtors unless they are authorized to pay certain prepetition claims. These goods and/or services are essential to the Debtors' ability to continue operations of their businesses. The Debtors' reorganization process would be irreparably harmed if there were any disruption in the continuation of the services of the Debtors' businesses. Additionally, the Debtors may be expected to pay a premium for replacement goods and/or services because of the perceived risks of doing business in chapter 11 cases.

7.

Finding replacement providers for the goods and/or services identified in this Motion would, in some cases, be impossible, and, for others, an arduous and lengthy task. To the extent that the Debtors are even able to locate replacement vendors (which is not likely), not only would the Debtors be unfamiliar with their goods and/or services and therefore unable to insure the quality of the goods and services to be provided, but the delay in finding such replacements may have irreversible consequences.

8.

This type of relief is often granted in bankruptcy cases. Courts often grant this relief pursuant to section 105 of the Bankruptcy Code and/or the "necessity of payment" rule which was first enunciated by the Supreme Court in *Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S.

3

286 (1882). Pursuant to this doctrine, a bankruptcy court will permit a debtor to make post-petition payments in respect to pre-petition claims when such payments are necessary to the successful rehabilitation of the debtor. *See, e.g., In re Lehigh & N.E. Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (noting that under necessity of payment doctrine, "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus [of the estate] . . .").

9.

The relief requested herein is consistent with the policies of the Bankruptcy Code and the purpose of section 105(a)'s granting of power to this Court. In short, the Debtors must be permitted, in their sole discretion and in the ordinary course of business, to pay or honor pre-petition claims of the Critical Vendors in order to maintain the continuity of the Debtors' businesses, and it serves the best interests of Debtors' creditors and other parties in interest as it allows the Debtors to continue operations and maximize the value of the Debtors' assets.

10.

Further, the Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code which provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). *See, e.g., In re UAL Corporation, et al.,* Case No. 02-48191 (ERW) (Bankr. N.D. Ill. December 11, 2002) (an essential trade motion generated by section 363 is "completely consistent with the Bankruptcy Code" and such payments have further support where the debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include payment of a prepetition obligation"); *In re Armstrong World Indus., Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to section 363, a contractor to pay prepetition claims of some suppliers who

were potential lien claimants, because the payments were necessary for the general contractors to release funds owed to the debtors).

11.

Courts will allow payment of pre-petition amounts to critical vendors if it is established that: (1) the payments are necessary to the reorganization process; (2) sound business justification exists in that critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and, (3) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. *See In re Kmart Corp.,* 359 F.3d 866, 872 (7th Circ. 2004). "The practical justification of allowing payment of critical vendors under section 363 is the recognition that there are instances where vendors not paid for prior deliveries will refuse to make new ones." *Tropical Sportswear*, 320 B.R. at 19. Without the delivery of critical goods and/or services, the Debtors may be unable to continue in business.

12.

A complete description of the goods and services provided by the Critical Vendors and the reasons these vendors are deemed "critical" is provided below:

**Progressive Acute Care Avoyelles, LLC**

| Vendor | Pre-Petition Amount Owed | Services/Goods Provided |
|---|---|---|
| Hawkeye Medical Group | $126,040 | Hospitalists |
| Delta Pathology Lab | $26,840 | Pathology Lab |
| Majestic Medical Solutions | $24,732 | Radiology Equipment service |

**Progressive Acute Care Oakdale, LLC**

| Vendor | Pre-Petition Amount Owed | Services/Goods Provided |
|---|---|---|
| Delta Pathology Lab | $3,317 | Pathology Lab |
| Majestic Medical Solutions | $24,898.45 | Radiology Equipment service |
| Dr. Thomas Davis | $20,175 | Supervisor of Nurse Practitioners |
| Dr. Stephen Normand | $7,121 | Director of Medical Lab |
| Dr. Patrick Savoy | $13,750 | On-call Surgeon |

**Progressive Acute Care Winn, LLC**

| Vendor | Pre-Petition Amount Owed | Services/Goods Provided |
|---|---|---|
| Delta Pathology Lab | $8,422 | Pathology Lab |
| Majestic Medical Solutions | $19,248 | Radiology Equipment service |
| Baton Rouge Radiology Group | $19,073 | Radiology Physicians |

13.

Hawkeye Medical Group provides the physicians who specialize in the care of the patients in the Avoyelles Hospital. These Hospitalists are necessary to the ongoing operations of the Debtors and are required to oversee patient care. The Hospitalists are familiar with the patients' health history, diagnosis' and care plans. To familiarize a new set of Hospitalists would be a time consuming and challenging task that would result in the disruption of ongoing treatment plans.

14.

Delta Pathology Group provides the services and testing for all lab work performed in the three Hospitals. Their pathology equipment is utilized in the Hospital labs. To replicate their services, it would be necessary to hire a new pathology lab group and obtain new equipment; the time within which that would take would be extremely disruptive to the patients as the Hospitals would have interrupted lab work access which could jeopardize the health of the patients.

15.

Similarly, Majestic Medical Solutions provides the in-house radiology equipment services to the Hospitals. Majestic is the only vendor known to the Debtors to provide radiology equipment repairs and preventative maintenance, in compliance with regulatory standards, for all three Hospitals. The Debtors' loss of these essential Hospital services would be disruptive and potentially interrupt patient care.

6

16.

Dr. Thomas David, Dr. Stephen Normand, Dr. Patrick Savoy are the contracted hospital physicians at PAC Oakdale; and Baton Rouge Radiology Group are the contracted hospital physicians at PAC Winn (collectively, the "Physicians"). The services provided by these physicians are necessary and vital to the continued operation of the PAC Oakdale and PAC Winn Hospitals; and, the uninterrupted quality of patient care and patient assessments. These Physicians are familiar with the needs of each patient, including the proposed plans of treatment. In addition, the use of these Physicians is mandated under applicable federal and state regulations.

17.

As detailed above, maintaining the relationships with the Critical Vendors is vital to the Debtors' continuing business operations and the success of these chapter 11 cases. In addition, and as also detailed above, the Debtors have concluded that the Critical Vendors will cease doing business with the Debtors, unless payments of prepetition amounts are made. Such an outcome would devastate the Debtors' businesses and cost the estates and their creditors far more than the costs associated with paying some portion of such prepetition amounts. Thus, the Debtors' other creditors will be no worse off, and in fact will fare far better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to their operations. In light of the foregoing, the Debtors submit that payment of the prepetition amounts due Critical Vendors is plainly in the best interests of their estates and creditors.

18.

For these reasons, the Debtors request authority to pay in full certain prepetition obligations to these Critical Vendors in the amounts as set forth on Exhibit "A" following entry of an order of this Court permitting same.

19.

Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim(s) against the Debtors, a waiver of the Debtors' rights to dispute any claim(s), avoid any transfer(s) under Section 547, or the approval or assumption of any agreement(s), contract(s) or lease(s). Likewise, if this Court grants the relief requested herein, any payment made or credit granted pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim(s), or waiver(s) of the Debtors' right to subsequently dispute such claim.

## Notice

20.

Notice of this Motion has been given to: (i) the United States Trustee; and, (ii) all creditors and parties in interest as shown on the Official Mailing List.

21.

No prior requests for the relief sought herein have been made to this or any other court.

**WHEREFORE**, the Debtors pray that this Court issue an Order authorizing, but not requiring, the Debtors to pay the claims of certain Critical Vendors, following due notice and a hearing on same; and, for any and all other relief this Honorable Court deems necessary and proper.

Respectfully submitted by:

/s/ Noel Steffes Melancon
WILLIAM E. STEFFES (#12426)
BARBARA B. PARSONS (#28714)
NOEL STEFFES MELANCON (#30072)
**STEFFES, VINGIELLO & McKENZIE, L.L.C**.
13702 Coursey Boulevard, Bldg. 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Fax: (225) 751-1998
Email: nmelancon@steffeslaw.com
*Proposed Counsel for Debtors*

**EXHIBIT "A"**

| | |
|---|---|
| Hawkeye Medical Group<br>4239 Hwy 1192, Suite 100<br>Marksville, AL 71351 | $126,040 |
| Delta Pathology Group<br>3000 Knight Street, Suite 220<br>Building 5<br>Shreveport, LA 71105 | $38,579 |
| Majestic Medical Solutions<br>207 W. Eastbank Street<br>Gonzales, LA 70737 | $68,878 |
| Dr. Thomas Davis<br>105 Hospital Drive<br>Oakdale, LA 71463 | $20,175 |
| Dr. Stephen Normand<br>63 Rosalie Road D<br>Alexandria, LA 71303-2839 | $7,121 |
| Dr. Patrick Savoy<br>PO Box 1103<br>Oakdale, LA 71463 | $13,750 |
| Baton Rouge Radiology Group<br>Attn: Jane Hume<br>PO Box 14530<br>Baton Rouge, LA 70898-4530 | $19,073 |