## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## Lafayette Division

| | |
|---|---|
| IN RE: | CASE NO. 16-50740 |
| PROGRESSIVE ACUTE CARE, LLC, et al. | CHAPTER 11 |
| DEBTORS | JOINTLY ADMINISTERED |

### RESPONSE TO OBJECTIONS TO BIDDING PROCEDURES MOTION

**NOW INTO COURT**, through undersigned counsel, come Progressive Acute Care, LLC ("PAC"), Progressive Acute Care Avoyelles ("PAC Avoyelles"), LLC, Progressive Acute Care Oakdale, LLC ("PAC Oakdale") and Progressive Acute Care Winn, LLC ("PAC Winn") as debtors and debtors-in-possession (collectively, the "Debtors"), which in response to the *Limited Objection to Sale Procedures Motion* filed by The Schumacher Group of Louisiana, Inc., Iberia Physician Services, LLC, Iberia Emergency Group, LLC, Avoyelles Emergency Group, LLC, Winn Emergency Group, LLC and Allen Emergency Group, LLC (collectively, "The Schumacher Group") [P-214]; and, the *Motion in Objection to Debtor Docket No. 183 Motion Under 11 U.S.C. §§ 363(b) and (f) and 365 for: (I) Preliminary Order (i) Approving Bidding Procedures and Stalking Horse Bid and Fee, (ii)Prescribing Notice Requirements, and (iii) Setting Hearing Date, Time and Place for Auction of Debtors' Property; and, for (II) Order Approving Sale of Assets and Assumption and Assignment of Certain Contracts and Leases and Amounts of Cure, if any, Related Thereto* filed by Richard Hylland ("Hylland") [P-212], respectfully represent as follows:

1.

On July 14, 2016, the Debtors filed their *Motion Under 11 U.S.C. §§ 363(b) and (f) and 365 for: (I) Preliminary Order (i) Approving Bidding Procedures and Stalking Horse Bid and Fee,*

*(ii) Prescribing Notice Requirements, and (iii) Setting Hearing Date, Time and Place for Auction of Debtors' Property; and, for (II) Order Approving Sale of Assets and Assumption and Assignment of Certain Contracts and Leases and Amounts of Cure, if any, Related Thereto* (P-183) (the "Bidding Procedures Motion") relating to a proposed sale of substantially all assets of the Debtors.

2.

Both the objections of The Schumacher Group and Hylland focus on the issue of assumption of insider/management contracts. The Schumacher Group cites Paragraph 7 of the *Bidding Procedures Motion*:

> "all current employees of the Hospitals would be offered employment by the buyer at Closing such that no lapse of employment would exist during transition of ownership."

While such provision is included in the Stalking Horse Asset Purchase Agreement ("Stalking Horse APA"), <u>it does not encompass employees of PAC</u>. All insiders of the Debtors are employed by PAC – not the Hospital Debtors (PAC Avoyelles, PAC Oakdale and PAC Winn). Only Hospital employees would be offered employment in connection with the sale. *See* Paragraph 2 of the *Bidding Procedures Motion*[1], defining and/or describing the "Hospitals".

3.

Through his objection, Hylland references Stalking Horse APA, Section 5.9[2] in support of the erroneous suggestion that the Stalking Horse APA requires the Purchaser "to assume and pay

---

[1] The Debtors own and operate three (3) community-based hospitals ("Hospitals"), ranging from 50-60 bed capacity, which provide inpatient, outpatient and emergency care, primarily for residents of the immediate regions of the Hospitals. The Hospitals are located in Marksville (PAC Avoyelles), Oakdale (PAC Oakdale) and Winnfield (PAC Winn). PAC is the sole member and manager of each of the three Hospital Debtors and the membership interests in the Hospital Debtors are its primary assets.

[2] The Debtors note the existence of a misprint in Section 5.9 of the Stalking Horse APA and the Form APA, which will be promptly corrected and filed into the record of this case, *i.e.*, Section 5.9 should read as indicated through the redlined changes below:

out" the management contracts[3] identified in Schedule 5.9 thereof ("Management Contracts"). Although the Management Contracts of PAC are *disclosed* in the accompanying schedules, <u>the Stalking Horse APA does not contemplate their assumption or payout</u>. As set forth in *Section 9.1 Offers of Employment*, the agreement only contemplates offers of employment to *Hospital* employees:

> (a) "Not later than ten Business Days prior to the Closing, Purchaser shall deliver, in writing in a form reasonably acceptable to Sellers, ***an offer of employment by Purchaser for those employees of PAC-A, PAC-O and PAC-W*** that Purchaser intends to retain together with their proposed rates of compensation." *Stalking Horse APA,* Section 9.1(a) (emphasis added).

---

5.9 <u>Employees; Employee Benefits</u>. Except as described in <u>Schedule 5.10</u>, in connection with Sellers' operation of the Business, (i) Sellers are not a party to any labor, collective bargaining, employee association or other agreement which contains provisions governing the terms and conditions of employment of any Employee, and (ii) no labor union or employee association has been certified as exclusive bargaining agent for any group of Employees. <u>Schedule 5.10</u> identifies the labor or collective bargaining agreements applicable to Employees to be terminated by the Sellers at Closing and assumed by Purchaser at the Closing in accordance with the provisions of this Agreement (the "Assumed CBAs"). Prior to the date hereof, Sellers have delivered to Purchaser a list of all its Employees as of a recent date, indicating their position, current annual rate of compensation or current hourly wage rate or other basis of compensation and date of hire by Sellers. <u>Schedule 5.9</u> lists: (i) all material "employee benefit plans", as defined in Section 3(3) of ERISA, and all other material employee benefit arrangements or payroll practices, including, without limitation, bonus plans, consulting or other compensation agreements, incentive, or deferred compensation arrangements, severance pay, sick leave, vacation pay, salary continuation, disability, hospitalization, medical insurance, life insurance, scholarship programs maintained by Sellers or to which Sellers contributed or is obligated to contribute thereunder for current or former Employees (the "Employee Benefit Plans"); and (ii) all "employee pension plans", as defined in Section 3(2) of ERISA, subject to Title IV of ERISA or Section 412 of the Code, maintained by Seller in which any current or former Employees participated. <u>Schedule 5.9</u> separately sets forth each such employee pension plan which is a multiemployer plan as defined in Section 3(37) of ERISA ("Multiemployer Plans"), or has been subject to Sections 4063 or 4064 of ERISA ("Multiple Employer Plans")."

The foregoing changes are consistent with the immediately following Section 5.10:

"<u>5.10 Labor</u>. Except as set forth on <u>Schedule 5.10</u>, Sellers are not a party to any labor or collective bargaining agreement."

[3] The *Management Contracts* identified in Schedule 5.9 are: Daniel Rissing Employment Agreement; Hector Lopez Employment Agreement; Mike Hurlburt Employment Agreement; Wayne Thompson Employment Agreement; Kurt Bennett Employment Agreement; Brad Mabry Employment Offer; Donna Varnado Salary Deferral; and, Hector Lopez Salary Deferral.

Finally, at the July 26, 2016 hearing on this matter, counsel for the Stalking Horse Bidder will confirm that his client has no intention of assuming any of the Management Contracts or offering employment to any of the parties thereto.

4.

As set forth herein, neither the Stalking Horse APA nor the Form APA contemplate assumption of the Management Contracts through the sale of the Debtors' assets. Accordingly, the objections of both The Schumacher Group and Hylland are without merit and should be overruled.

WHEREFORE, the Debtors respectfully request that this Court overrule the objections of The Schumacher Group and Richard Hylland and grant the relief sought through the Bidding Procedures Motion.

Respectfully submitted by:

/s/ Barbara B. Parsons
WILLIAM E. STEFFES (#12426)
BARBARA B. PARSONS (#28714)
NOEL STEFFES MELANCON (La. Bar No. 30072)
**STEFFES, VINGIELLO & McKENZIE, L.L.C**.
13702 Coursey Boulevard, Bldg. 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Fax: (225) 751-1998
Email: bparsons@steffeslaw.com

*Counsel for Debtors*

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
Lafayette Division

IN RE:

PROGRESSIVE ACUTE CARE, LLC            CASE NO. 16-50740

    DEBTOR                                      CHAPTER 11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the Debtors' *Response to Objections to Bidding Procedures Motion* has been served upon the following via Email through this Court's CM/ECF Electronic Notification System:

Bradley L. Drell bdrell@goldweems.com
George C. Freeman, III gfreeman@barrassousdin.com
Alan H. Goodman alan.goodman@bswllp.com
Joseph P. Hebert jphebert@liskow.com
Kimberly L. Humbles kimberly.humbles@la.gov
J. Eric Lockridge eric.lockridge@keanmiller.com
Armistead M. Long along@gordonarata.com
Thomas J. Lutkewitte tlutkewitte@favretlaw.com
Gail Bowen McCulloch gail.mcculloch@usdoj.gov
Richard J. Reynolds rreynolds@ahmgt.com
Ronald J. Savoie ronnie@jlaw.net
Mark P. Seyler mseyler@barkleythompson.com
Andrew H. Sherman asherman@sillscummis.com
Victoria Viator Theriot ttheriot@neunerpate.com
Office of U. S. Trustee USTPRegion05.SH.ECF@usdoj.gov
Stephen D. Wheelis steve@wheelis-rozanski.com

**I HEREBY FURTHER CERTIFY** that a copy of the response has been served upon Richard Hylland via Email to hyllands38@msn.com.

Baton Rouge, Louisiana, this 25th day of July, 2016.

                                         /s/ Ashley D. Kujawa
                                         Ashley D. Kujawa