**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**Lafayette Division**

IN RE:                                              CASE NO. 16-50740

PROGRESSIVE ACUTE CARE, LLC, et al.               CHAPTER 11

    DEBTORS                                         JOINTLY ADMINISTERED

### RESPONSE TO JOINT OBJECTION TO PROPOSED SALE OF DEBTORS' ASSETS

**NOW INTO COURT**, through undersigned counsel, come Progressive Acute Care, LLC ("PAC"), Progressive Acute Care Avoyelles ("PAC Avoyelles"), LLC, Progressive Acute Care Oakdale, LLC ("PAC Oakdale") and Progressive Acute Care Winn, LLC ("PAC Winn") as debtors and debtors-in-possession (collectively, the "Debtors"), which in response to the *Joint Objection to Proposed Sale of Debtors' Assets,* filed by certain creditors ("Objecting Creditors") (a) The Schumacher Group of Louisiana, Inc., Iberia Physician Services, LLC, Iberia Emergency Group, LLC, Avoyelles Emergency Group, LLC, Winn Emergency Group, LLC and Allen Emergency Group, LLC (collectively, "The Schumacher Group"); (b) Sheridan Healthcare of Louisiana, Inc. ("Sheridan") and (c) Parallon Business Solutions, LLC ("Parallon") [P-264], respectfully represent as follows:

1.

On July 14, 2016, the Debtors filed their *Motion Under 11 U.S.C. §§ 363(b) and (f) and 365 for: (I) Preliminary Order (i) Approving Bidding Procedures and Stalking Horse Bid and Fee, (ii) Prescribing Notice Requirements, and (iii) Setting Hearing Date, Time and Place for Auction of Debtors' Property; and, for (II) Order Approving Sale of Assets and Assumption and Assignment of Certain Contracts and Leases and Amounts of Cure, if any, Related Thereto* (P-183) (the "Sale Motion") relating to a proposed sale of substantially all assets of the Debtors (the

"Sale"). This Court entered an Order [P-226] approving the *Sale Motion* on July 29, 2016, overruling the objections of the Schumacher Group.

2.

Each of the Debtors filed a voluntary petition for relief under title 11 of the U.S. Code ("Bankruptcy Code") on May 31, 2016 ("Petition Date"). Although the Debtors contemplated filing these cases after an asset purchase agreement had been fully negotiated and executed, creditor action, *including action taken by the Schumacher Group and Sheridan*, as judgment creditors, precipitated the case filings before this goal could be achieved.

3.

Through their Objection, the Objecting Creditors request that this Court deny the Debtors' *Sale Motion* and prevent consummation of the proposed sale of the Debtors' Assets for the following reasons:

(a) no meaningful details related to marketing of the Assets were included in the *Sale Motion* to demonstrate sufficient marketing efforts;

(b) the Debtors did not contact the Objecting Creditors for assistance with marketing the Assets;

(c) a lower cash amount is likely being received because of the buyer's assumption of certain administrative expenses and other liabilities; and

(d) the acceptance of an earnest money deposit would not lead to the submission of bids by parties financially capable of closing the Sale.

4.

At the outset, the Debtors submit that the Objecting Creditors' request to deny – or even delay granting – the Sale Motion based on the objections they cite is wholly unreasonable. In the abundance of caution, the objections are addressed below.

First, with regard to the marketing process described in the *Sale Motion*, the Debtors identified, *inter alia*, the time frame in which the Assets were marketed, the number of parties to whom the Assets were directly marketed, the number of site visits conducted, the number of offers submitted and withdrawn and other action taken during the marketing process. The Debtors do not dispute the assertion of the Objecting Creditors that it is the Debtors' burden to demonstrate sufficient marketing efforts; however, such demonstration has always been contemplated to occur at the appropriate time and place, *i.e.*, the final hearing on the *Sale Motion*. The Debtors are fully prepared to introduce evidence, including the testimony of Gregory Hagood of SOLIC and others who have been directly involved in the solicitation process. Such evidence will clearly demonstrate that the marketing efforts employed by SOLIC and the Debtors were more than sufficient to "test the market values of the assets to be sold." While the Sale price is less than the values of the Assets scheduled by the Debtors, such values were based on appraisals of, *inter alia*, hospital operations. As is evident with all or substantially all sales of businesses and good will, the true value of a business can only be defined or fixed by the amount a buyer is willing to pay for it.

5.

Secondly, the Objecting Creditors complain that they were not contacted to assist the Debtors in marketing the Assets; however, such action was neither required nor warranted. While the Debtors do not dispute that the Objecting Creditors *may* have extensive contacts in the hospital

industry, the Debtors believe it was more prudent to contact and retain SOLIC, financial advisors who have *extensive experience in marketing* hospitals and a direct economic incentive to maximize the Sale price. To the best of Debtors' knowledge, the Objecting Creditors are not actively in the business of marketing hospitals or any other health care facilities.

6.

With regard to the objection related to a lower cash price resulting from the Stalking Horse Bid, this objection too is without merit. Some of the consideration included in the Sale price does in fact represent assumption of the Debtors' liabilities. Those liabilities are largely made up of administrative expenses, which, under the Bankruptcy Code, must be paid in priority to other creditors. Thus, any higher cash payment gained by not including such assumption of liabilities would simply go to pay the exact administrative expenses assumed by the Stalking Horse Bidder.

7.

Finally, the decision to accept a $500,000 deposit as "earnest money" was a business decision by the Debtors' management. The Objecting Creditors argue that this decision would result in less than financially capable parties bidding on the Debtors' Assets. As was made evident on the Bid Deadline, not only were the Objecting Creditors wrong about the quality of bids, *no other bids were submitted for purchase of the Assets*.

8.

The Objection includes other commentary regarding the Debtors and their actions, none of which is relevant to approval of the Sale of the Assets. As set forth above, the Objecting Creditors offer no support for their request to deny the *Sale Motion*. The Objection is thus without merit and should be overruled.

WHEREFORE, the Debtors respectfully request that this Court overrule the objections of the Objecting Creditors and grant the final relief sought through the Bidding Procedures Motion.

Respectfully submitted by:

/s/ Barbara B. Parsons
WILLIAM E. STEFFES (#12426)
BARBARA B. PARSONS (#28714)
NOEL STEFFES MELANCON (La. Bar No. 30072)
**STEFFES, VINGIELLO & McKENZIE, L.L.C**.
13702 Coursey Boulevard, Bldg. 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Fax: (225) 751-1998
Email: bparsons@steffeslaw.com

*Counsel for Debtors*