UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
Lafayette Division

IN RE:                                      CASE NO. 16-50740

PROGRESSIVE ACUTE CARE, LLC, et al.         CHAPTER 11

    DEBTORS                                 JOINTLY ADMINISTERED

## MOTION FOR DISTRIBUTION OF SALE PROCEEDS

**NOW INTO COURT**, through undersigned counsel, comes Business First Bancshares, Inc. d/b/a Business First Bank ("Business First"), which hereby moves this Court for an order authorizing Progressive Acute Care, LLC, Progressive Acute Care Avoyelles, LLC, Progressive Acute Care Oakdale, LLC, and Progressive Acute Care Winn, LLC (collectively, "PAC"), as the debtors in possession, to distribute the cash proceeds in possession received from the sale of estate assets. In support thereof, Business First respectfully represents as follows:

## BACKGROUND

1.

On May 31, 2016, PAC filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code.

2.

PAC previously owned and operated community-based hospitals in Allen, Winn, and Avoyelles parishes.

3.

On July 14, 2016, a *Motion under 11 U.S.C. §§ 363(b) and (f) and 365 for: (I) Preliminary Order (i) Approving Bidding Procedures and Stalking Horse Bid and Fee, (ii) Prescribing Notice Requirements, and (iii) Setting Hearing Date, Time and Place for Auction*

1

*of Debtors' Property; and, for (II) Order Approving Sale of Assets and Assumption and Assignment of Certain Contracts and Leases and Amounts of Cure, if any, Related Thereto* (P-183) (the "Sale Motion") was filed relating to a proposed sale of substantially all assets of the PAC (the "Sale").

4.

The Stalking Horse Bidder was deemed to be the Successful Bidder, and, on August 26, 2016, a final hearing on approval of the Sale to the Successful Bidder was held, and the sale was approved.

5.

The Sale was completed effective September 1, 2016, and, pursuant to the Sale, payment of the $10,550,000 purchase price was made by (1) application of the $500,000 cash deposit previously provided by the Successful Bidder/purchaser, and (2) remittance of a wraparound promissory note for $10,050,000.00, payable on demand 45 days from date of Sale (the "Note," and, collectively with the deposit, the "Sale Proceeds").

6.

The Note will be paid upon closing of the purchaser's financing through another lending source. The closing of that loan and corresponding payment of the Note is expected to take place on September 30, 2016 (the "Closing").

**RELIEF REQUESTED**

7.

Business First seeks an Order authorizing the distribution of the Sale Proceeds in possession in the amount of $10,314,125.10, which is the amount owed to Business First as of September 16, 2016.

2

## BASIS FOR RELIEF REQUESTED

8.

Business First is the owner and holder of two promissory notes, both dated April 30, 2013, in the original principal sum of $20,000,000 ("Real Estate Term Loan"), and in the principal sum of $3,000,000 ("LOC Loan"). Both loans have been amended to change both the principal amounts due and the term of the promissory notes. A copy of the Real Estate Term Loan Note is attached as Exhibit A. A copy of the LOC Loan Note is attached as Exhibit B.

9.

The Real Estate Term Loan is secured in part by a multiple indebtedness mortgage on immovable property owned by PAC. A copy of the Multiple Indebtedness Mortgage is attached as Exhibit C.

10.

The LOC Loan is further secured by a Commercial Security Agreement affecting the accounts, equipment and general intangibles of PAC.

11.

Both loans are cross-collateralized and, therefore, both loans are secured by PAC's real estate and movable assets.

12.

Business First's Claim is secured by properly perfected, non-avoidable, first-priority security interests pursuant to 11 U.S.C. § 506

13.

The debtor in possession may sell property free and clear of any interest of an entity in such property other than the estate if such entity consents. 11 U.S.C. § 363(f). Business First

3

consented to the Sale.

14.

The sale of property of the estate's assets free and clear of liens does not impair, divest, void, cancel, or destroy any liens or interests, but merely transfers liens or interests attached to particular property to the liquidated Sale Proceeds in possession and control of the estate and provides for satisfaction of liens in order of priority to the extent proceeds derived from the sale are sufficient to satisfy all valid liens and encumbrances. 11 U.S.C.A. § 363(f).

15.

As such, Business First is entitled to receive the Sale Proceeds due to its status as a secured creditor. 11 U.S.C.A. § 363(f) & § 506.

16.

PAC recently submitted a *Fourth Consent Order Authorizing the Use of Cash Collateral and Granting Related Relief.* (Doc. 304). Attached to the Consent Order is DIP Consolidated Budget (dated September 11, 2016) for the weeks beginning September 2, 2016 through October 14, 2016 ("Budget")(Doc. 304-1). This Budget covers the period from the Sale through the anticipated receipt of payment on the buyer's Note.

17.

According to the Budget, the ending cash balance for PAC after receipt of the final Sale Proceeds, will be $10,420,684. (Doc. 304-1).

18.

The Budget includes payment of all currently pending and submitted administrative expenses (Debtors' counsel, Counsel for UCC, SOLIC's Success Fee, etc.).

4

19.

Debtor has also advised the parties it anticipates collecting additional receivables that were retained by PAC and not included in the Sale. The additional receivables, which are expected to be collected beginning in October, are estimated to total around $700,000.

20.

As a result of the Sale Proceeds and anticipated collection of retained receivables, Business First is an oversecured creditor, and therefore entitled to 506(b) post-petition interest and attorney's fees, as provided by the Real Estate Loan and LOC Loan. Consequently, post-petition interest is accruing and recoverable attorney's fees and costs continue to be incurred on Business First's Claim. The estate will benefit from the immediate payment of the senior secured claim of Business First in that so long as the claim remains unpaid, the estate's interest in the cash collateral continues to be reduced by the accrual of post-petition interest, attorney's fees and costs, which will reduce the amount available to pay junior creditors and unsecured creditors.

21.

Business First's Claim presently totals $10,314,125.10, plus additional interest at a rate of $1,689.57 per diem (combined for both notes), plus additional attorney's fees and costs.

22.

If the Sale Proceeds are distributed in payment of Business First's Claim, an estimated $800,000 in cash, plus any other claims against third parties, will remain in the estate and be available to pay junior creditors and unsecured creditors.

23.

Upon payment of Business First's Claim in this case, its claim in the related Progressive Acute Care-Dauterive, LLC Chapter 7 case will also be satisfied, leaving an estimated $600,000

or more available to satisfy unsecured creditors of that estate.

24.

Upon information and belief, Debtors intend to consolidate the two cases.

**WEREFORE**, Business First respectfully requests that the Court enter the Order granting the distribution of cash proceeds at Closing and granting Business First such other and further relief as is just.

Respectfully submitted:

**LONG LAW FIRM, L.L.P.**


BY: /s/ Sharon S. Whitlow
DAVID L. GUERRY (#14980)(Lead Atty)
SHARON S. WHITLOW (#21893)
MARK L. BARBRE (#30385)
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809
Telephone: (225) 922-5110
Facsimile: (225) 922-5105
*Counsel for Business First Bank*

6

*00000000037001051095504302013028-31473320CL*

# PROMISSORY NOTE

| **Borrower:** | Progressive Acute Care Oakdale, L.L.C. (TIN: 26-3147332); Progressive Acute Care Winn, L.L.C. (TIN: 26-3147149); Progressive Acute Care Avoyelles, L.L.C. (TIN: 26-3147245); Progressive Acute Care Dauterive, LLC (TIN: 36-4756243); and Progressive Acute Care, LLC (TIN: 28-2491719) 2210 7th Street, Suite B Mandeville, LA 70471 | **Lender:** | Business First Bank North Shore Banking Center 1675 Hwy 190 Covington, LA 70433 |
|---|---|---|---|

**Principal Amount: $20,700,000.00**                                                        **Date of Note: April 30, 2013**

**PROMISE TO PAY.** Progressive Acute Care Oakdale, L.L.C.; Progressive Acute Care Winn, L.L.C.; Progressive Acute Care Avoyelles, L.L.C.; Progressive Acute Care Dauterive, LLC; and Progressive Acute Care, LLC ("Borrower") promise to pay to the order of Business First Bank ("Lender"), in lawful money of the United States of America the sum of Twenty Million Seven Hundred Thousand & 00/100 Dollars (U.S. $20,700,000.00), together with simple interest assessed on a variable rate basis as provided in the "VARIABLE INTEREST RATE" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on April 30, 2013, and continuing until this Note is paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 regular payments of $172,981.12 each and one irregular last payment estimated at $16,869,492.46. Borrower's first payment is due June 5, 2013, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due on May 5, 2018, may be greater if Borrower does not make payments as scheduled. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the "Prime Rate" designated in the "Money Rates" section of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The rate currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.750% per annum based on a year of 360 days. Under no circumstances will the interest rate on this Note be less than 5.750% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following. (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may prepay this Note in full at any time by paying the unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of repayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Borrower agrees to pay minimum interest of 25.00 if the amount has not been earned by Lender at the time of prepayment. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Business First Bank, 8440 Jefferson Hwy , Suite 101 Baton Rouge, LA 70809

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10 000% of the unpaid portion of the regularly scheduled payment with a maximum of $500 00 Late charges will not be assessed following declaration and acceleration of the maturity of this Note

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows (A) If the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater (B) If the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note.

**Payment Default.** Borrower fails to make any payment when due under this Note

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment


**EXHIBIT**
**A**

in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan

**WAIVE JURY. BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.**

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $30.00.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now owe or in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees

**COLLATERAL.** Borrower acknowledges this Note is secured by collateral described in separate security documents. Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

**FINANCIAL INFORMATION.** In order to induce Lender to make the loans evidenced by this Note and otherwise to extend credit or make credit accommodations to Borrower, Borrower has provided to Lender, and will continue to provide to Lender from time to time, financial statements and related financial information pertaining to Borrower and/or the collateral for this Note (including without limitation balance sheets, income statements, tax returns, operating statements, rent rolls, liquidity reports, account statements and other financial information)  Borrower acknowledges that Lender has relied on such financial information in making the loans evidenced by this Note and will continue to rely on all financial information heretofore or hereafter provided by Borrower in making future decisions with respect to additional credit accommodations to be made available to Borrower (including without limitation decisions with respect to (i) future loan requests, (ii) future renewals and extensions of this Note, (iii) possible future interest rate charges, (iv) possible waivers of default and/or (v) possible releases of collateral, guarantors or co-obligors)  With respect to all financial information that has been or may hereafter be provided to Lender by Borrower or by others acting on Borrower's behalf, Borrower hereby represents, warrants and certifies that such financial information is and will be true, correct and complete in all respects. Borrower agrees to notify Lender immediately and in writing of any material adverse change in (a) any of such financial information, (b) the financial condition of Borrower, or (c) the ability of Borrower to perform its obligations to Lender  In the absence of any notice in writing, all financial information heretofore or hereafter provided to Lender by or on behalf of Borrower shall be considered as a continuing statement and substantially correct at all times while Borrower is obligated to Lender.

**DEPOSIT RELATIONSHIP REQUIREMENT.** Borrower covenants and agrees with Lender that Borrower will establish and maintain a deposit account relationship with Lender

**NO CHANGE IN MANAGEMENT.** Borrower covenants and agrees with Lender that Borrower shall not, without the prior written consent of Lender make or allow any changes in its present executive and management personnel, whether voluntary or involuntary, and whether by death, disability or otherwise

**BUSINESS LOAN AGREEMENT.** Borrower acknowledges that the loan represented by this Note constitutes an additional extension of credit under that certain Business Loan Agreement (ASSET BASED) dated April 30, 2013, by and between Borrower and Lender, and shall in all respects be governed by said Loan Agreement

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis  Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender  Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof  In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies  Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies, it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature  Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing  A waiver or forbearance on the part of Lender to pursue any such rights or remedies shall not be construed as a waiver or forbearance as to any other default  Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge  Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages  Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns  The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency  Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address  Business First Bank 8440 Jefferson Hwy , Suite 101 Baton Rouge, LA 70809

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La R S 9 3509, et seq

**PROMISSORY NOTE**
**(Continued)**

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

**BORROWER:**

PROGRESSIVE ACUTE CARE OAKDALE, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Oakdale, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE WINN, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Winn, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE AVOYELLES, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Avoyelles, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE DAUTERIVE, LLC

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Dauterive, LLC

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE, LLC

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

LASER PRO Lending, Ver. 12.x.10.003 Copr. Harland Financial Solutions, Inc. 1997, 2013. All Rights Reserved. - LA F:\CFI\LPL\D20.FC TR-8282 PR-1



*0000000000370010780955043020130Z6-31473320CL*

# PROMISSORY NOTE

**Borrower:** Progressive Acute Care Oakdale, L.L.C. (TIN: 26-3147332); Progressive Acute Care Winn, L.L.C. (TIN: 26-3147149); Progressive Acute Care Avoyelles, L.L.C. (TIN: 26-3147245); Progressive Acute Care Dauterive, LLC (TIN: 36-4756243); and Progressive Acute Care, LLC (TIN: 26-2491719) 2210 7th Street, Suite B Mandeville, LA 70471

**Lender:** Business First Bank North Shore Banking Center 1675 Hwy 190 Covington, LA 70433

---

**Principal Amount: $3,000,000.00**          **Date of Note: April 30, 2013**

**PROMISE TO PAY.** Progressive Acute Care Oakdale, L.L.C.; Progressive Acute Care Winn, L.L.C.; Progressive Acute Care Avoyelles, L.L.C.; Progressive Acute Care Dauterive, LLC; and Progressive Acute Care, LLC ("Borrower") promise to pay to the order of Business First Bank ("Lender"), in lawful money of the United States of America the sum of Three Million & 00/100 Dollars (U.S. $3,000,000.00) or such other or lesser amounts as may be reflected from time to time on Lender's books and records as evidencing the aggregate unpaid principal balance of loan advances made to Borrower on a revolving line of credit basis as provided herein, together with simple interest assessed on a variable rate basis as provided in the "VARIABLE INTEREST RATE" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on April 30, 2013, and continuing until this Note is paid in full.

**LINE OF CREDIT.** This Note evidences a revolving line of credit ("master note"). Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's deposit accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those acceptable to Lender; or (E) Lender in good faith believes itself insecure with regard to repayment of this Note or any other agreement between Lender and Borrower.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 5, 2015. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 6, 2013, with all subsequent interest payments to be due on the same day of each month after that until this Note is paid in full. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the "Prime Rate" designated in the "Money Rates" section of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.750% per annum based on a year of 360 days. Under no circumstances will the interest rate on this Note be less than 5.750% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may prepay this Note in full at any time by paying the unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of repayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Business First Bank, 8440 Jefferson Hwy., Suite 101 Baton Rouge, LA 70809

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 10.000% of the unpaid portion of the regularly scheduled payment with a maximum of $500.00. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) If the unpaid principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater. (B) If the unpaid principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum based on a year of 360 days, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.

**Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.

**Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

EXHIBIT

B

tabbies

*CE 37001078*

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein  Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**WAIVE JURY.** BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $30 00.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits) Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees

**COLLATERAL.** Borrower acknowledges this Note is secured by collateral described in separate security documents  Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request .

**FINANCIAL INFORMATION.** In order to induce Lender to make the loans evidenced by this Note and otherwise to extend credit or make credit accommodations to Borrower, Borrower has provided to Lender, and will continue to provide to Lender from time to time, financial statements and related financial information pertaining to Borrower and/or the collateral for this Note (including without limitation balance sheets, income statements, tax returns, operating statements, rent rolls, liquidity reports, account statements and other financial information)  Borrower acknowledges that Lender has relied on such financial information in making the loans evidenced by this Note and will continue to rely on all financial information heretofore or hereafter provided by Borrower in making future decisions with respect to additional credit accommodations to be made available to Borrower (including without limitation decisions with respect to (i) future loan requests, (ii) future renewals and extensions of this Note, (iii) possible future interest rate changes, (iv) possible waivers of default and/or forbearances, and (v) possible releases of collateral, guarantors or co-obligors.)  With respect to all financial information that has been or may hereafter be provided to Lender by Borrower or by others acting on Borrower's behalf, Borrower hereby represents, warrants and certifies that such financial information is and will be true, correct and complete in all respects  Borrower agrees to notify Lender immediately and in writing of any material adverse change in (a) any of such financial information, (b) the financial condition of Borrower; or (c) the ability of Borrower to perform its obligations to Lender. In the absence of any notice in writing, all financial information heretofore or hereafter provided to Lender by or on behalf of Borrower shall be considered as a continuing statement and substantially correct at all times while Borrower is obligated to Lender.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis  Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender  Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof.  In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies, it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature  Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing.  A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default  Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lenders for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge  Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages  Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns.  The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency  Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address  Business First Bank 8440 Jefferson Hwy., Suite 101 Baton Rouge, LA 70809.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of  La  R.S. 9:3509, et seq.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.

BORROWER:

PROGRESSIVE ACUTE CARE OAKDALE, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Oakdale, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE WINN, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Winn, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE AVOYELLES, L.L.C.

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Avoyelles, L.L.C.

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE DAUTERIVE, LLC

PROGRESSIVE ACUTE CARE, LLC, Manager of Progressive Acute Care Dauterive, LLC

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

PROGRESSIVE ACUTE CARE, LLC

By: _____
Wayne D. Thompson, Authorized Individual of
Progressive Acute Care, LLC

LASER PRO Lending, Ver. 12.4.10.003  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - LA  F:\CFI\LPL\D20.FC  TR-6286  PR-5

## Iberia Parish Cover Sheet

**Michael Thibodeaux**
**Iberia Parish Clerk of Court**
P. O. Drawer 12010
New Iberia, LA 70562-2010
(337) 365-7282

**Received From :**
FIRST AMERICAN TITLE INSURANCE

**First MORTGAGOR**
PROGRESSIVE ACUTE CARE LLC

**First MORTGAGEE**
BUSINESS FIRST BANK

**Index Type :** Mortgages

**Type of Document :** Mult Indebt Mtg

**Recording Pages :** 19

**File Number :** 2013-00004918

**Book :** 1549        **Page :** 415

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Iberia Parish, Louisiana


Clerk of Court

On (Recorded Date) : 05/06/2013

At (Recorded Time) : 10:23:12AM

Doc ID - 008407590019

Return To :

Do not Detach this Recording Page from Original Document

**EXHIBIT**
**C**
tabbies'



*00000000003700105112900430201302 6-31473320CL*

## MULTIPLE INDEBTEDNESS MORTGAGE

| | | |
|---|---|---|
| **Borrower:** | Progressive Acute Care Oakdale, L.L.C. (TIN: ##-###7332); Progressive Acute Care Winn, L.L.C. (TIN: ##-###7149); Progressive Acute Care Avoyelles, L.L.C. (TIN: ##-###7245); Progressive Acute Care Dauterive, LLC (TIN: ##-###6243); and Progressive Acute Care, LLC (TIN: ##-###1719) 2210 7th Street, Suite B Mandeville, LA 70471 | **Mortgagee:** Business First Bank North Shore Banking Center 1675 Hwy 190 Covington, LA 70433 |
| **Mortgagor:** | Progressive Acute Care, LLC (TIN: ##-###1719) 2210 7th Street, Suite B Mandeville, LA 70471 | |

---

MULTIPLE INDEBTEDNESS MORTGAGE

BY: Progressive Acute Care, LLC

IN FAVOR OF:

Business First Bank

And Any Future Holder or Holders

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

BE IT KNOWN, that on April 30, 2013;

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses;

PERSONALLY CAME AND APPEARED:

Progressive Acute Care, LLC, a limited liability company duly organized, validly existing and in good standing under the laws of the State of South Carolina and has its registered offices at 2210 7th Street, Suite B, Mandeville, LA, 70471, appearing herein through its duly Authorized Individual;

WHO DECLARED THAT:

### TERMS AND CONDITIONS:

INDEBTEDNESS. The word "Indebtedness" as used in this Mortgage means individually, collectively and interchangeably any and all present and future loans, advances, and/or other extensions of credit obtained and/or to be obtained by Borrower or Mortgagor from Mortgagee,

as well as Mortgagee's successors and assigns, from time to time, one or more times, now and in the future, under any and all promissory notes evidencing such present and/or future loans, advances, and/or other extensions of credit, including without limitation, a Note dated April 30, 2013, in the principal amount of $20,700,000.00, from Borrower to Mortgagee, and any and all amendments thereto and/or substitutions therefor, and any and all renewals, extensions and refinancings thereof, as well as any and all other obligations, including, without limitation, Borrower's or Mortgagor's covenants and agreements in any present or future loan or credit agreement or any other agreement, document or instrument executed by Borrower or Mortgagor and liabilities that Borrower or Mortgagor may now and/or in the future owe to and/or incur in favor of Mortgagee, whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether related or unrelated, or whether committed or purely discretionary, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, due or to become due, and whether now existing or hereafter arising, or otherwise secured or unsecured, whether Borrower or Mortgagor are obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or as a surety, guarantor, or endorser, of every nature and kind whatsoever, whether or not any such indebtedness may be barred under any statute of limitations or prescriptive period or may be or become otherwise unenforceable or voidable for any reason whatsoever. Notwithstanding any other provision of this Mortgage, the maximum amount of indebtedness secured hereby shall be limited to $50,000,000.00.

**GRANTING OF MORTGAGE.** And now, in order to secure the prompt and punctual payment and satisfaction of the indebtedness, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and additionally to secure repayment of any and all Additional Advances that Mortgagee may make on behalf of Mortgagor as provided in this Mortgage, together with interest thereon, Mortgagor does by these presents specifically mortgage, affect and hypothecate unto and in favor of Mortgagee, any and all of Mortgagor's present and future rights, title and interest in and to the following described Property located in Iberia Parish, State of Louisiana:

The immovable (real) property specifically described as follows:

> See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

Together with any and all present and future buildings, constructions, component parts, improvements, attachments, appurtenances, fixtures, rights, ways, privileges, advantages, batture, and batture rights, servitudes and easements of every type and description, now and/or in the future relating to the Property, and any and all items and fixtures attached to and/or forming integral or component parts of the Property in accordance with the Louisiana Civil Code.

The Property or its address is commonly known as 600 North Lewis Avenue, Buildings 1-16, New Iberia, LA 70563.

**MORTGAGE SECURING FUTURE INDEBTEDNESS.** This Mortgage has been executed by Mortgagor pursuant to Article 3298 of the Louisiana Civil Code for the purpose of securing Borrower's indebtedness that may now be existing or that may arise in the future as provided herein, with the preferences and priorities provided under applicable Louisiana law. However, nothing under this Mortgage shall be construed as limiting the duration of this Mortgage or the purpose or purposes for which Borrower's indebtedness may be requested or extended. Borrower's additional loans will automatically be secured by this Mortgage without the necessity that Mortgagor agrees or consents to such a result at the time additional loans are made and that the note or notes evidencing such additional loans reference the fact that such notes are secured by this Mortgage. Mortgagor understands that Mortgagor may not subsequently have a change of mind and insist that Borrower's additional loans not be secured by this Mortgage unless Mortgagee specifically agrees to such a request in writing.

**DURATION OF MORTGAGE.** This Mortgage will remain in effect until (A) all of the indebtedness is fully paid and satisfied and there is no agreement or commitment to advance any additional indebtedness; and (B) Mortgagor cancels this Mortgage by filing a written cancellation instrument signed by Mortgagee. When all of the indebtedness is fully paid and satisfied and there is no agreement or commitment to advance any additional indebtedness, Mortgagor may request Mortgagee to sign such a written cancellation instrument by writing Mortgagee at the above address or at such other address as Mortgagee may advise. Mortgagee may delay providing Mortgagor with such a mortgage cancellation instrument for a period of sixty (60) days following receipt of Mortgagor's written request, or such longer time as may be necessary for Mortgagee to verify that all conditions precedent for mortgage cancellation have

been satisfied.

**PROHIBITIONS REGARDING PROPERTY.** So long as this Mortgage remains in effect, Mortgagor shall not, without the prior written consent of Mortgagee, sell, transfer, forego, assign, pledge, do anything or permit anything to be done that may in any way affect Mortgagee's security interests and rights in and to the mortgaged Property, or create or permit to exist any Encumbrance in or against any of the Property, in favor of any person other than Mortgagee.

**REPRESENTATIONS AND WARRANTIES CONCERNING THE PROPERTY.** Except as previously disclosed to Mortgagee in writing, Mortgagor represents and warrants that: (A) Mortgagor is and will continue to be the lawful owner of the Property; (B) Mortgagor has the right to mortgage the Property to Mortgagee; (C) as of the time this Mortgage is recorded, there are no Encumbrances affecting the Property; (D) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, liens, or claims of, or in favor of, any person, firm, corporation, or other entity; and (E) this Mortgage is binding upon Mortgagor as well as Mortgagor's heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is cancelled in the manner provided above.

**INSURANCE PROVISIONS.** The following insurance provisions are a part of this Mortgage:

**Required Insurance.** So long as this Mortgage remains in effect, Mortgagor shall, at its sole cost, keep and/or cause others, at their expense, to keep the Property constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance, where applicable) as may be be required by Mortgagee. Such insurance shall be in an amount not less than the full replacement value of the Property, or such other amount or amounts as Mortgagee may require or approve in writing. Mortgagor shall further provide and maintain, at its sole cost and expense, comprehensive public liability insurance, naming both Mortgagor and Mortgagee as parties insured, protecting against claims for bodily injury, death and/or property damage arising out of the use, ownership, occupancy, possession, operation and condition of the Property, and further containing a broad form contractual liability endorsement covering Mortgagor's obligations to indemnify Mortgagee as provided hereunder. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Mortgagor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Mortgagee that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Mortgagee, and to maintain such insurance for the term of the loan.

**Insurance Companies and Policies.** Mortgagor may purchase such insurance from any insurance company or broker that is acceptable to Mortgagee, provided that such approval may not be unreasonably withheld. All such insurance policies, including renewals and replacements, must also be in form and substance acceptable to Mortgagee, and must additionally contain a lender's loss payee endorsement in favor of Mortgagee, including in part that (1) all proceeds and returned premiums under such policies of insurance will be paid directly to Mortgagee, and (2) no act or omission on the part of Mortgagor, or any of its directors, officers, agents, employees or representatives, nor breach of any warranty contained in such policies, shall affect the obligations of the insurer to pay the full amount of any loss to Mortgagee. Such policies of insurance must also contain a provision prohibiting cancellation, nonrenewal, or the alteration of such insurance without at least ten (10) days prior written notice to Mortgagee of such intended cancellation or alteration. Mortgagor agrees to provide Mortgagee with originals or certified copies of such policies of insurance. Mortgagor further agrees to promptly furnish Mortgagee with copies of all renewal notices and, if requested by Mortgagee, with copies of receipts for paid premiums. Mortgagor shall provide Mortgagee with originals or certified copies of all renewal or replacement policies of insurance no later than fifteen (15) days before any such existing policy or policies should expire. If Mortgagor's insurance policies and renewals are held by another person, Mortgagor agrees to supply original or certified copies of the same to Mortgagee within the time periods required above.

**Property Losses and Claims.** Mortgagor agrees to immediately notify Mortgagee in writing of any material casualty to or accident involving the Property, whether or not such casualty or loss is covered by insurance. Mortgagor further agrees to promptly notify Mortgagor's insurance company and to submit an appropriate claim and proof of claim to the insurance

company in the event that any of the Property is lost, damaged, or destroyed as a result of an insured hazard. Mortgagee may submit such a claim and proof of claim to the insurance company on Mortgagor's behalf, should Mortgagor fail to do so promptly for any reason. Mortgagee hereby irrevocably appoints Mortgagee as its agent and attorney-in-fact, such agency being coupled with an interest, to make, settle and adjust claims under such policy or policies of insurance and to endorse the name of Mortgagor on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more Events of Default exist under this Mortgage, Mortgagee will not settle or adjust any such claim without the prior approval of Mortgagor (which approval shall not be unreasonably withheld).

**Insurance Proceeds.** Mortgagee shall have the right to directly receive the proceeds of all insurance protecting the Property. In the event that Mortgagor should receive any such insurance proceeds, Mortgagor agrees to immediately turn over and to pay such proceeds directly to Mortgagee. All insurance proceeds may be applied, at Mortgagee's sole option and discretion, and in such a manner as Mortgagee may determine (after payment of all reasonable costs, expenses and attorney's fees necessarily paid or fees necessarily paid or incurred by Mortgagee in this connection), for the purpose of: (1) repairing or restoring the lost, damaged or destroyed Property; or (2) reducing the then outstanding balance of the Indebtedness and any Additional Advances that Mortgagee may have made on Mortgagor's behalf, together with interest thereon. Mortgagee's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Mortgage. Nothing under this section shall be deemed to excuse Mortgagor from its obligations to promptly repair, replace or restore any lost or damaged Property, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Mortgagee. Furthermore, unless otherwise confirmed by Mortgagee in writing, the application or release of any insurance proceeds by Mortgagee shall not be deemed to cure or waive any Event of Default under this Mortgage.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Mortgagor shall promptly pay or cause to be paid when due, all taxes, local and special assessments, and governmental and other charges, as well as all public and/or private utility charges, of every type and description, that may from time to time be imposed, assessed and levied against the mortgaged Property or against Mortgagor.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Mortgagor agree that Borrower's and Mortgagor's possession and use of the Property shall be governed by the following provisions:

**Use of Property.** Mortgagor shall not use the Property and shall not permit others to use the Property, for any purpose or purposes other than those previously disclosed to Mortgagee in writing, and in no event shall any of the Property be used in any manner that would damage, depreciate, or diminish its value, or that may result in a cancellation or termination of insurance coverage. Mortgagor additionally agrees not to do or to suffer to be done anything which may increase the risk of fire or other hazard to the Property or any part or parts thereof. Mortgagor shall not permit the Property, or any portion thereof, to be used by the public and others as may make possible a claim or claims of adverse usage, easement, servitude, right of way or habitation, or adverse possession by the public and others, or any implied, tacit or other dedication of the Property.

**Compliance with Applicable Laws and Regulations.** Mortgagor shall observe and abide by, and shall cause others to observe and abide by, all present and future laws, ordinances, orders, rules, regulations, restrictions, and requirements of all federal, state and municipal governments, courts, departments, commissions, boards, agencies, and officers, affecting the Property and its use.

Mortgagor shall further promptly perform and observe, and shall cause others to promptly perform and observe, all the terms, covenants and conditions of any requirements, instruments and agreements affecting the Property, non-compliance with which may adversely affect the priority of this Mortgage, or which may impose any duty or obligation upon Mortgagor, or upon any lessee or other occupant of the Property. Mortgagor shall further do and cause to be done all things necessary to preserve intact and unimpaired any and all easements, servitudes, appurtenances and other interests and rights in favor of, or constituting any portion of, the Property.

**Compliance With Environmental Laws.** Mortgagor represents and warrants to Mortgagee

that: (1) During the period of Mortgagor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Mortgagor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Mortgagee in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Mortgagee in writing, (a) neither Mortgagor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Mortgagor authorizes Mortgagee and its agents to enter upon the Property to make such inspections and tests, at Mortgagor's expense, as Mortgagee may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Mortgagee shall be for Mortgagee's purposes only and shall not be construed to create any responsibility or liability on the part of Mortgagee to Mortgagor or to any other person. The representations and warranties contained herein are based on Mortgagor's due diligence in investigating the Property for Hazardous Substances. Mortgagor hereby (1) releases and waives any future claims against Mortgagee for indemnity or contribution in the event Mortgagor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Mortgagee against any and all claims, losses, liabilities, damages, penalties, and expenses which Mortgagee may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Mortgagor's ownership or interest in the Property, whether or not the same was or should have been known to Mortgagor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Mortgagee's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**ERISA.** Mortgagor represents and warrants to Lender that the granting of this Mortgage and the consummation of any loan or loans or other transactions contemplated or secured hereby will not violate the provisions of, and will not constitute a prohibited transaction under the ERISA.

**Alterations.** Mortgagor shall not, without the prior written consent of Mortgagee, demolish, remove, construct, restore, add to or alter any building(s) or other improvements to or upon the Property, or any part or parts thereof, or consent to, or permit any such demolition, removal, construction, restoration, addition or alteration. Mortgagor shall further not, without the prior written consent of Mortgagee, remove or permit the removal of any present or future fixtures and other property forming part of the Property. Mortgagee may condition its consent to permit Mortgagor to demolish or to remove such improvements, fixtures and/or other property upon Mortgagor's agreement to replace the same with new improvements and/or fixtures of at least equal value then satisfactory to Mortgagee.

**Abandonment of Property.** Mortgagor shall not, nor shall Mortgagor permit others to abandon, commit waste, or destroy the Property, or any part or parts thereof.

**Repairs and Maintenance.** Mortgagor shall keep and maintain, and/or cause others to keep and maintain, the Property and the sidewalks and curbs adjoining the Property, in good order, repair and condition. Mortgagor shall further make and/or cause all necessary repairs to be made to the Property (including the repair and restoration of any portion of the Property that may have been damaged, lost or destroyed).

**ENCUMBRANCES.** The following provisions relating to Encumbrances on the Property are a part of this Mortgage:

**Prior Encumbrances.** To the extent applicable, Mortgagor shall fully and timely perform any and all of Mortgagor's obligations under any prior Encumbrances affecting the Property. Without limiting the foregoing, Mortgagor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Mortgagor shall further promptly notify Mortgagee in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Mortgagor shall

further not modify or extend any of the terms of any prior Encumbrance or any Indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Property, or any part or parts thereof, with possible preference and priority over the lien of this Mortgage.

**Future Encumbrances.** Mortgagor shall not, without the prior written consent of Mortgagee, grant any Encumbrance that may affect the mortgaged Property, or any part or parts thereof, nor shall Mortgagor permit or consent to any Encumbrance attaching to or being filed against any of the mortgaged Property in favor of anyone other than Mortgagee. Mortgagor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the mortgaged Property, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against the Property or any of Mortgagor's Rights.

**Notice of Encumbrances.** Mortgagor shall immediately notify Mortgagee in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Mortgagor additionally agrees to notify Mortgagee immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Mortgagor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the mortgaged Property, or should any of the mortgaged Property be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Mortgagee.

**ADDITIONAL ADVANCES FOR SPECIFIC PURPOSES.** Mortgagee shall have the right, within Mortgagee's sole option and discretion, to make Additional Advances on Mortgagor's behalf for the following purposes:

**Insurance.** If Mortgagor should for any reason fail to maintain insurance on the Property as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of purchasing and maintaining, and Mortgagee may purchase and maintain such insurance coverage (including insurance protecting only Mortgagee's interests in the Property).

**Taxes.** If Mortgagor should for any reason fail to promptly pay when due taxes, assessments and governmental and other charges as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of paying, and Mortgagee may pay, such taxes, assessments and governmental and other charges.

**Repairs.** If Mortgagor should for any reason fail to make all necessary repairs to the Property and to keep the Property in good working order and condition as required under this Mortgage, Mortgagor agrees that Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of making, and Mortgagee may make, such repairs and maintenance to the Property as Mortgagee may deem to be necessary and proper within its sole discretion.

**Encumbrances.** If Mortgagor should permit or allow any Encumbrance to attach to or be recorded or filed against the Property, without having first obtained Mortgagee's prior written consent, or if Mortgagor should for any reason default under any obligation secured by any presently existing or future Encumbrance, Mortgagee may make Additional Advances on Mortgagor's behalf and take such other action or actions as Mortgagee may deem to be necessary and proper, within Mortgagee's sole discretion, to pay and fully satisfy such obligation and/or Encumbrance, to cure or rectify any such default or defaults, and to prevent the occurrence of any future defaults.

**Other.** Mortgagee may further make Additional Advances on Mortgagor's behalf and take such other action or actions as Mortgagee may deem to be necessary and proper, within Mortgagee's sole discretion, to cure and rectify any actions or inactions on Mortgagor's part, as are required under this Mortgage, that are not listed immediately above.

**No Obligations.** Nothing under this Mortgage shall obligate Lender to make any such Additional Advances or to take any of the above actions on Grantor's behalf, or as making Lender in any way responsible or liable for any loss, damage or injury to Grantor, or to any other person or persons, resulting from Lender's election not to advance such additional sums or to take such action or actions. In addition, Lender's election to make Additional Advances and/or to take the above actions on Grantor's behalf shall not constitute a waiver

or forbearance by Lender of any Event of Default under this Mortgage.

**OBLIGATION TO REPAY ADDITIONAL ADVANCES; INTEREST.** Mortgagor unconditionally agrees to repay any and all Additional Advances that Mortgagee may elect to make on Mortgagor's behalf, together with interest as provided herein, immediately upon demand by Mortgagee. Mortgagor further agrees to pay Mortgagee interest on the amount of such Additional Advances at the rate of interest provided under the above referenced promissory note or at the legal rate of interest provided under applicable law, whichever is greater from the date of each such Advance until all such Advances are repaid in full. Mortgagor's obligations to repay Additional Advances to Mortgagee, together with interest thereon, shall be secured by this Mortgage.

**COLLATERAL ASSIGNMENT AND PLEDGE OF RIGHTS AS ADDITIONAL SECURITY.** As additional collateral security for the prompt and punctual payment and satisfaction of any and all present and future indebtedness in favor of Mortgagee as may be outstanding from time to time, at any one or more times, and all Additional Advances that Mortgagee may make on Mortgagor's behalf pursuant to this Mortgage, together with interest thereon as provided herein, Mortgagor hereby assigns, pledges and grants Mortgagee a continuing security interest in and to:

    **Proceeds.** Any and all proceeds derived or to be derived from the sale, transfer, conveyance, insurance loss, damage, destruction, condemnation, expropriation, or other taking of the Property, or other proceeds and proceeds of proceeds, and any unearned insurance premiums relating thereto, including the rights of Mortgagor to receive such proceeds directly from the obligor or obligors therefor, and to further enforce any rights that Mortgagor may have to collect such proceeds, including without limitation, Mortgagor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

    **Leases, Rents and Profits.** Any and all present and future leases or subleases affecting the mortgaged Property, and all rents, income, and profits therefrom, including without limitation, any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including Mortgagor's rights to enforce all present and future leases or subleases and to receive and enforce any rights that Mortgagor might have to collect rental and all other payments.

    **Deposits.** Any and all present and future deposits or other security or advance payments, including rental payments, made by or on behalf of Mortgagor to others, with respect to (1) utility service regarding the Property, (2) cleaning, maintenance, repair, or similar services regarding the Property, (3) refuse removal or sewer service regarding the Property, (4) rentals of equipment, if any, used in the operation by or on behalf of Mortgagor regarding the Property, and/or (5) parking or similar services or rights regarding the Property.

    **Options.** Any and all present and future options to sell or lease the mortgaged Property or any interest therein.

    **Contract Rights.** To the extent assignable and/or transferrable, any and all of Mortgagor's present and future contract rights, instruments, documents, and general intangibles necessary for use or useful in connection with the ownership and operation of all or any part of the Property, whether now existing or hereafter created, or otherwise acquired by Mortgagor, and all liens, security interests, guaranties, remedies, privileges and other rights pertaining thereto, and all rights and remedies of any kind forming the subject matter thereof.

**REPRESENTATIONS AND WARRANTIES CONCERNING RIGHTS.** Mortgagor represents and warrants that: (A) Mortgagor is and/or will be the lawful owner of all of the Rights; (B) Mortgagor has the right to collaterally assign and pledge all such Rights to Mortgagee; (C) Mortgagor has not granted any previous security interests and has not otherwise encumbered any of Mortgagor's Rights; (D) to the extent applicable, all of Mortgagor's Rights that consist of or give rise to obligations of third parties, represent and/or will at all times continue to represent bona fide obligations of the obligors thereunder, free of any offset, compensation, deduction or counterclaim. The collateral assignment and pledge of Mortgagor's Rights are further binding upon Mortgagor, as well as Mortgagor's heirs, successors, representatives and assigns, and are legally enforceable in accordance with the foregoing terms and conditions.

**ADDITIONAL OBLIGATIONS OF MORTGAGOR WITH REGARD TO COLLATERALLY ASSIGNED AND PLEDGED RIGHTS.** Mortgagor additionally agrees:

    **Prohibitions Regarding Property.** So long as this Mortgage remains in effect, Mortgagor shall not, without the prior written consent of Mortgagee, sell, transfer, forego, assign,

pledge, do anything or permit anything to be done that may in any way affect Mortgagee's security interests and rights in and to the mortgaged Property, or create or permit to exist any Encumbrance in or against any of the Property, in favor of any person other than Mortgagee.

**No Settlement or Compromise.** Mortgagor shall not, without the prior written consent of Mortgagee, compromise, settle, adjust or extend payment under or with regard to any of Mortgagor's Rights subject hereto.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Mortgagee to examine and audit Mortgagor's books and records at all reasonable times.

**Notice to Obligors.** Upon request by Mortgagee, Mortgagor immediately will notify individual obligors and debtors under Mortgagor's Rights, advising such obligors and debtors of the fact that their respective agreements or obligations have been collaterally assigned and pledged to Mortgagee. In the event that Mortgagor should fail to provide such notices for any reason upon Mortgagee's request, Mortgagor agrees that Mortgagee may forward appropriate notices to such obligors and debtors either in Mortgagee's name or in Mortgagor's name.

**Protection of Rights.** Mortgagor will at all times protect and preserve all of Mortgagor's Rights.

**Notice of Change of Names.** Mortgagor will promptly notify Mortgagee of any change in Mortgagor's name, including any change to the assumed business names of Mortgagor. Mortgagor will also promptly notify Mortgagee of any change in Mortgagor's social security number or employer identification number. Mortgagor further agrees to notify Mortgagee in writing prior to any change in address or location of Mortgagor's principal office.

**EVENTS OF DEFAULT.** The following actions or inactions or both shall constitute Events of Default under this Mortgage:

**Default Under the Note.** Should Borrower or Mortgagor default in the payment of principal or interest under the Note or any of the Indebtedness.

**Default Under this Mortgage.** Should Mortgagor violate, or fail to comply fully with any of the terms and conditions of, or default under this Mortgage.

**Default Under other Agreements.** Should any default occur or exist under any Related Document which directly or indirectly secures repayment of any of the Indebtedness.

**Other Defaults in Favor of Mortgagee.** Borrower, Mortgagor, or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Mortgagee.

**Default in Favor of Third Parties.** Should Borrower, any guarantor or Mortgagor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Mortgagor's property or Borrower's or any guarantor's ability to repay the Indebtedness or Borrower's, any guarantor's or Mortgagor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**Death.** Borrower or Mortgagor, or any guarantor of the Indebtedness, dies.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or Mortgagor or any Guarantor occur or exist.

**Readjustment of Indebtedness.** Should proceedings for readjustment of Indebtedness, reorganization, composition or extension under any insolvency law be brought by or against Borrower or Mortgagor or any Guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or Mortgagor or any Guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's or Mortgagor's property, or the property of any Guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Mortgagor or any guarantor are commenced.

**Failure to Pay Additional Advances.** Borrower or Mortgagor fails to pay any Additional Advance, together with interest thereon, as provided in this Mortgage, upon Mortgagee's demand.

**False Statements.** Any warranty, representation or statement made or furnished to Mortgagee by Borrower or Mortgagor or on Borrower's or Mortgagor's behalf, the Note, is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Mortgagee in good faith believes itself insecure with regard to repayment of the Indebtedness.

**OTHER DEFAULTS.** Borrower or Mortgagor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Mortgagee and Borrower or Mortgagor.

**MORTGAGEE'S RIGHTS UPON DEFAULT.** Should one or more Event of Default occur or exist under this Mortgage, as provided above, Mortgagee, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provided by law:

**Acceleration; Foreclosure.** Mortgagee shall have the right, at its sole option, to accelerate the maturity and demand immediate payment in full of any and all of the Indebtedness. Mortgagee shall then have the right to commence appropriate foreclosure proceedings against the Property and against Mortgagor's Rights as provided in this Mortgage.

**Seizure and Sale of Property.** In the event that Mortgagee elects to commence appropriate Louisiana foreclosure proceedings under this Mortgage, Mortgagee may cause the Property, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

**Executory Process.** For purposes of foreclosure under Louisiana executory process procedures, Mortgagor confesses judgment and acknowledges to be indebted to Mortgagee, up to the full amount of the Indebtedness in principal, interest, costs, expenses, reasonable attorneys' fees and other fees and charges. Mortgagor further confesses judgment and acknowledges to be indebted unto and in favor of Mortgagee in the amount of all Additional Advances that Mortgagee may make on Mortgagor's behalf pursuant to this Mortgage, together with interest thereon. To the extent permitted under applicable Louisiana law, Mortgagor additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Mortgagor further agrees that any declaration of fact made by authentic act before a Notary Public and two witnesses, by a person declaring that such facts are within his or her knowledge, shall constitute authentic evidence of such facts for purposes of foreclosure under applicable Louisiana law and for purposes of La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, to the extent applicable.

**Keeper.** Should any or all of the Property be seized as an incident to an action for the recognition or enforcement of this Mortgage, by executory process, sequestration, attachment, writ of fieri facias or otherwise, Mortgagor hereby agrees that the court issuing any such order shall, if requested by Mortgagee, appoint Mortgagee, or any agent designated by Mortgagee or any person or entity named by Mortgagee at the time such seizure is requested, or any time thereafter, as Keeper of the Property as provided under La. R.S. 9:5136, et seq. Such a Keeper shall be entitled to reasonable compensation. Mortgagor agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Mortgage in the form of an Additional Advance as provided in this Mortgage.

**Declaration of Fact.** Should it become necessary for Mortgagee to foreclose under this Mortgage, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, as applicable.

**Separate Sale of Mortgagor's Rights Following Default.** Should one or more Event of Default occur or exist under this Mortgage, Mortgagee shall have the additional right, at its sole option, to separately sell the aforesaid Rights, or any part or parts thereof, at private or public sale, at such price or prices as Mortgagee may deem best, either for cash or for any other compensation, or on credit, or for future delivery, without the assumption of any credit risk.. The sale of the aforesaid Rights may be without appraisement, the benefit of which is also expressly waived by Mortgagor. Mortgagee may exercise any other remedies with regard to Mortgagor's Rights as may be authorized under the Louisiana Commercial Laws (La. R.S. 10:9-101, et seq.).

**Automatic Transfer of Rights.** In the event of foreclosure under this Mortgage, or other transfer of title or assignment of the Property, or any part or parts thereof, in lieu of payment of the Indebtedness , whether in whole or in part, all policies of insurance and other Rights applicable to the foreclosed upon or transferred Property shall automatically inure to the benefit of and shall pass to the purchaser(s) or transferee(s) thereof, subject to the rights of the purchaser(s) or transferee(s) to reject such insurance coverage and/or Rights at its or their sole option and election.

**Specific Performance.** Mortgagee may, in addition to or in lieu of the foregoing remedies, in Mortgagee's sole discretion, commence an appropriate action against Mortgagor seeking specific performance of any covenant contained in this Mortgage or in aid of the execution or enforcement of any power in this Mortgage granted.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Mortgagee's rights and remedies, whether evidenced by this Mortgage or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Mortgagee to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Mortgagor under this Mortgage, after Mortgagor's failure to perform, shall not affect Mortgagee's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Mortgagee following an Event of Default, or in any way to limit or restrict the rights and ability of Mortgagee to proceed directly against Mortgagor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser of the Indebtedness, and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**MORTGAGEE'S RIGHT TO DIRECTLY COLLECT AND RECEIVE PROCEEDS AND PAYMENTS BEFORE OR AFTER DEFAULT.** Mortgagee shall have the right, at its sole option and election, at any time, whether or not one or more Event of Default then exist under this Mortgage, to directly collect and receive all proceeds and/or payments arising under or in any way accruing from Mortgagor's Rights, as such amounts become due and payable. In order to permit the foregoing, Mortgagor unconditionally agrees to deliver to Mortgagee, immediately following demand, any and all of Mortgagor's records, ledger sheets, and other documentation, in the form requested by Mortgagee, with regard to Mortgagor's Rights and any and all proceeds and/or payments applicable thereto.

Mortgagee shall have the further right, whether or not an Event of Default then exists under this Mortgage, where appropriate and within Mortgagee's sole discretion, to file suit, either in Mortgagee's own name or in the name of Mortgagor, to collect any and all proceeds and payments that may then and/or in the future be due and owing under and/or as a result of such rights. Where it is necessary for Mortgagee to attempt to collect any such proceeds and/or payments from the obligors therefor, Mortgagee may compromise, settle, extend, or renew for any period (whether or not longer than the original period) any obligation or indebtedness thereunder or evidenced thereby, or surrender, release, or exchange all or any part of said obligation or indebtedness, without affecting the liability of Mortgagor under this Mortgage or under the Indebtedness. To that end, Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact, coupled with an interest and with full power of substitution, to take any and all such actions and any and all other actions permitted hereby, either in the name of Mortgagor or Mortgagee.

**PROTECTION OF MORTGAGEE'S SECURITY RIGHTS.** Mortgagor will be fully responsible for any losses that Mortgagee may suffer as a result of anyone other than Mortgagee asserting any rights or interest in or to the Property and/or Mortgagor's Rights collaterally assigned and pledged hereunder. Mortgagor agrees to appear in and to defend all actions or proceedings purporting to affect Mortgagee's security interests in any of the Property and/or Rights subject to this Mortgage and any of the rights and powers granted Mortgagee hereunder. In the event that Mortgagor fails to do what is required of it under this Mortgage, or if any action or proceeding is commenced naming Mortgagee as a party or affecting Mortgagee's security

interests or the rights and powers granted under this Mortgage, then Mortgagee may, without releasing Mortgagor from any of its obligations under this Mortgage, do whatever Mortgagee believes to be necessary and proper within its sole discretion to protect the security of this Mortgage, including without limitation making Additional Advances on Mortgagor's behalf as provided herein. Should the reappraisal of the Property occur, whether to comply with appropriate regulatory requirements or otherwise, Mortgagor agrees to pay the costs of such appraisal or reappraisals or to reimburse Mortgagee for the costs thereof.

**INDEMNIFICATION OF MORTGAGE.** Mortgagor agrees to indemnify, to defend and to save and hold Mortgagee harmless from any and all claims, suits, obligations, damages, losses, costs, expenses (including, without limitation, Mortgagee's attorney's fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Mortgagee, its officers, directors, employees, and agents arising out of or in any manner occasioned by this Mortgage and the exercise of the rights and remedies granted Mortgagee hereunder. The foregoing indemnity provisions shall survive the cancellation of this Mortgage as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Mortgagee elects to exercise any of the remedies as provided under this Mortgage following default hereunder.

**EXECUTION OF ADDITIONAL DOCUMENT.** Mortgagor agrees to execute all additional documents, instruments and agreements that Mortgagee may deem to be necessary and proper, within its sole discretion, in form and substance satisfactory to Mortgagee, to keep this Mortgage in effect, to better reflect the true intent of this Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document heretofore, now, or at any time or times hereafter executed by Mortgagor and delivered to Mortgagee.

**INSPECTION OF PROPERTY.:** Mortgagee and Mortgagee's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Property wherever located.

**AUDITS.** Mortgagee and its agents may also periodically conduct audits of Mortgagor's books and records that in any way pertain to the Property, the foregoing Rights and any part or parts thereof.

**APPLICATION OF PAYMENTS.** Mortgagor agrees that all payments and other sums and amounts received by Mortgagee under the Indebtedness or under this Mortgage, including, but not limited to, the net proceeds of any judicial or other sale, of any charter, management or other use of the Property by Mortgagee, of any claim for damages to the Property and of any insurance proceeds received by Mortgagee (except to the extent that such insurance proceeds are to be paid to Mortgagor pursuant to any other provisions of this Mortgage) shall be held and applied by Mortgagee from time to time in accordance with the terms of the Note.

**TAXATION.** In the event that there should be any change in law with regard to taxation of mortgages or the debts they secure, Mortgagor agrees to pay any taxes, assessments or charges that may be imposed upon Mortgagee as a result of this Mortgage.

**ADDITIONAL REPRESENTATIONS AND WARRANTIES.** Mortgagor further represents, warrants and covenants that:

**Organization.** Mortgagor is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of South Carolina. Mortgagor is duly authorized to transact business in all other states in which Mortgagor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Mortgagor is doing business. Specifically, Mortgagor is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Mortgagor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Mortgagor maintains an office at 2210 7th Street, Suite B, Mandeville, LA  70471. Unless Mortgagor has designated otherwise in writing, the principal office is the office at which Mortgagor keeps its books and records including its records concerning the Collateral. Mortgagor will notify Mortgagee prior to any change in the location of Mortgagor's state of organization or any change in Mortgagor's name. Mortgagor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Mortgagor and Mortgagor's business activities.

**Authorization.** Mortgagor's execution, delivery, and performance of this Mortgage and all the Related Documents have been duly authorized by all necessary action by Mortgagor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Mortgagor's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Mortgagor or (2) any law, governmental regulation, court decree, or order applicable to Mortgagor or to Mortgagor's properties.

**Consents and Approvals.** If notice to or the consent or approval of any governmental body or authority, or any third party (including without limitation, any other creditor of Mortgagor) is now or any time hereafter required in connection with the execution, delivery and performance by Mortgagor of this Mortgage, then (1) with respect to all currently applicable requirements, such notice has been given and consent or approval obtained by Mortgagor prior to the execution hereof and written evidence thereof has been concurrently herewith delivered to Mortgagee, and (2) with respect to such requirements that shall at any time hereafter be imposed or become applicable, such notice will be given and such consent or approval will be obtained by Mortgagor prior to the time such failure to do so will constitute a violation of law or result in any breach, default or failure by Mortgagor under any contract or instrument, and written evidence thereof will at such time be delivered to Mortgagee.

**Further Covenants.** Mortgagor further represents, warrants and agrees that: (1) Mortgagor has agreed and consented to grant the security interest provided herein to secure payment of Borrower's indebtedness in favor of Mortgagee at Borrower's request and not at the request of Mortgagee; (2) Mortgagor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness; (3) Mortgagor has established adequate means of obtaining information from Borrower on a continuing basis with regard to Borrower's financial condition; and (4) Mortgagee has made no representations to Mortgagor as to the creditworthiness of Borrower. Mortgagor agrees to keep adequately informed of any facts, events or circumstances which might in any way affect Mortgagor's risks with regard to Borrower's Indebtedness. Mortgagor further agrees that Mortgagee shall have no obligation to disclose to Mortgagor any information or material relating to Borrower's indebtedness.

**ADDITIONAL WAIVERS.** In granting this Mortgage, Mortgagor waives any and all homestead exemptions and other rights and all other exemptions from seizure or sale with regard to the Property to which Mortgagor may be entitled under the laws of the State of Louisiana. Mortgagor is also waiving the production of Mortgage, Conveyance and any and all other Certificates and relieves and releases the Notary Public before whom this Mortgage was passed from all responsibility and liability in connection therewith.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Mortgage, and no consent to any departure by Mortgagor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Mortgagee, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Effect of Waivers.** Any failure or delay on the part of the Mortgagee to exercise any of the rights and remedies granted under this Mortgage or under any other agreement or agreements by and between Borrower or Mortgagor and Mortgagee, shall not have the effect of waiving any of Mortgagee's rights and remedies. Any partial exercise of any rights and remedies granted to Mortgagee shall furthermore not constitute a waiver of any of Mortgagee's other rights and remedies; it being Mortgagor's intent and agreement that all of Mortgagee's rights and remedies shall be cumulative in nature. Furthermore, any failure on the part of Mortgagee at any time or times hereafter to require strict performance by Borrower or Mortgagor of any of the provisions, warranties, terms and conditions contained herein or in any other agreement, document or instrument now or hereafter executed by Borrower or Mortgagor and delivered to Mortgagee, shall not waive, affect, or diminish the rights of Mortgagee to thereafter demand strict compliance and performance therewith and with respect to all other provisions, warranties, terms and conditions contained herein or therein. None of the warranties, conditions, provisions and terms contained in this Mortgage or any other agreement, document, or instrument now or hereafter executed by Mortgagor and delivered to Mortgagee, shall be deemed to have been

waived by any act or knowledge of Mortgagee, its agents, directors, officers or employees; but only by an instrument in writing specifying such waiver, signed by a duly authorized officer of Mortgagee and delivered to Mortgagor. A waiver or forbearance on the part of Mortgagee as to one Event of Default shall not constitute a waiver or forbearance as to any other or subsequent default.

**Successors and Assigns Bound; Solidary Liability.** Mortgagor's obligations and agreements under this Mortgage shall be binding upon Mortgagor's successors, heirs, legatees, devisees, administrators, executors and assigns. In the event that there is more than one Mortgagor under this Mortgage, all of the agreements and obligations made and/or incurred by Mortgagors under this Mortgage shall be on a "solidary" or "joint and several" basis.

**Governing Law.** This Mortgage will be governed by federal law applicable to Mortgagee and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Mortgage has been accepted by Mortgagee in the State of Louisiana.

**Severability.** If any provision of this Mortgage is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Mortgage shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Mortgage shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Mortgage, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**WAIVER OF CERTIFICATES.** The parties to this Mortgage hereby waive the production of mortgage, conveyance, tax, paving, chattel mortgage, assignment of accounts, and all other certificates and relieve and release the Notary before whom this Mortgage was passed from all responsibilities and liabilities in connection therewith.

**WAIVE JURY.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.):

**Additional Advance.** The words "Additional Advance" mean any and all additional sums that Mortgagee may advance on Mortgagor's behalf as provided under this Mortgage.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Mortgage.

**Borrower.** The word "Borrower" means Progressive Acute Care Oakdale, L.L.C.; Progressive Acute Care Winn, L.L.C.; Progressive Acute Care Avoyelles, L.L.C.; Progressive Acute Care Dauterive, LLC; and Progressive Acute Care, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Encumbrance.** The word "Encumbrance" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges and other contractual and/or statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Property or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**ERISA.** The word "ERISA" means the Employee Retirement Income Security Act of 1974,

as amended from time to time, and including all regulations and published interpretations of the act.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the default section of this Mortgage.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means and includes all amounts identified in the Indebtedness section of this Mortgage.

**Mortgage.** The word "Mortgage" means this Multiple Indebtedness Mortgage as this Multiple Indebtedness Mortgage may be amended, supplemented, restated or otherwise modified from time to time.

**Mortgagee.** The word "Mortgagee" means Business First Bank, Mortgagee's successors and assigns, and any future holder or holders of the Indebtedness or any interest therein.

**Mortgagor.** The word "Mortgagor" means individually, collectively and interchangeably Progressive Acute Care, LLC, as well as any and all persons and entities subsequently purchasing the mortgaged Property, with or without assumption of this Mortgage.

**Note.** The word "Note" means the note or credit agreement dated April 30, 2013, in the principal amount of **$20,700,000.00** from Progressive Acute Care Oakdale, L.L.C.; Progressive Acute Care Winn, L.L.C.; Progressive Acute Care Avoyelles, L.L.C.; Progressive Acute Care Dauterive, LLC; and Progressive Acute Care, LLC to Lender, together with all substitute or replacement notes therefor, as well as all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

**Property.** The word "Property" means all of Mortgagor's right, title and interest in and to all the Property as described in the "Granting of Mortgage" section of this Mortgage.

**Real Property.** The words "Real Property" mean the real immovable property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rights.** The word "Rights" means any and all of Mortgagor's additional rights collaterally assigned and pledged to Mortgagee as provided under this Mortgage.

THUS DONE AND PASSED, on the day, month and year first written above, in the presence of the undersigned Notary and the undersigned competent witnesses, who hereunto sign their names with Mortgagor after reading of the whole.

WITNESSES:

X _Stephanie Bailey_
  Witness
  STEPHANIE BAILEY

X _Samantha L. Bloemer_
  Witness  Samantha L. Bloemer

**MORTGAGOR:**

**PROGRESSIVE ACUTE CARE, LLC**

By: _Wayne Thompson_

Wayne B. Thompson, Authorized Individual of
Progressive Acute Care, LLC

NOTARY PUBLIC _Julian J. Rodriguez Jr_

LA Bar/Notary ID No. _11373_

LASER PRO Lending, Ver. 12.4.10.008  Copr. Harland Financial Solutions, Inc. 1997, 2013  All Rights Reserved.  - LA  F:\CFI\LPL\G03.FC  TR-6167  PR-1

Fee Simple Interest in the following described property:

Tract 1

That certain tract or parcel of land, situated in Section 21, Township 12 South, Range 7 East, more particularly described as follows:

Being situated in the City of New Iberia, 6th Ward of Iberia Parish, Louisiana; containing 10.836 acres; commence at the intersection of the eastern line of North Lewis Avenue and the southern line of Andre Street, go along the southern line of Andre Street S62°15'31"E, 566.00 feet to the point of beginning; thence continue along the southern line of Andre Street S62°15'31"E, 48.05 feet to a point; thence leaving the south line of Andre Street go S31°08'01"W, 55.10 feet to a point; thence S62°15'30"E, 171.29 feet to a point; thence N25°58'17"E, 55.03 feet to the southern line of Andre Street; thence along the southern line of Andre Street S62°22'40"E, 24.16 feet to a point; thence leaving the southern line of Andre Street S25°58'17"W, 175.31 feet to a point; thence S67°20'16"E, 154.10 feet to a point; thence S23°06'41"W, 414.78 feet to a point in Bayou Tete; thence in Bayou Tete N62°16'01"W, 596.95 feet to a point; thence N61°38'30"W, 432.99 feet to the eastern line of North Lewis Avenue; thence along the eastern line of North Lewis Avenue N31°03'07"E, 434.34 feet to a point; thence leaving North Lewis Avenue S58°46'27"E, 565.00 feet to a point; thence N31°04'17"E 171.40 feet to the point of beginning.

Tract 2

That certain tract or parcel of land, situated in Section 21, Township 12 South, Range 7 East, within the corporate limits of the City of New Iberia, Iberia Parish, Louisiana, and being more particularly described as follows:

Commencing at the southeasternmost intersection of the rights of way of North Lewis Avenue and Andre Street, thence along the easterly right of way of North Lewis Avenue in a southerly direction a distance of 1,005 feet to the Point of Beginning; thence South 58°40'00" East a distance of 263.75 feet to a point; thence North 31°03'49" East a distance of 230.74 feet to a point; thence South 58°49'44" East a distance of 182.42 feet to a point; thence South 27°35'00" West a distance of 490.12 feet to a point; thence North 61°21'57" West a distance of 151.52 feet to a point; thence North 61°25'39" West a distance of 324.85 feet to a point; thence North 31°03'47" East a distance of 280.60 feet to the Point of Beginning.

The above described tract contains 3.900 acres (169,843.635 square feet), more or less, and is designated as Parcel "A" on that certain plat of survey prepared by Simon J. Freyou, Registered Land Surveyor, dated April 27, 1995, a copy of which is attached to Act recorded in Book 1096, folio 803 under Entry No. 95-5590, Records of Iberia Parish, Louisiana, and is bounded, now or formerly, northwesterly by North Lewis Street, northeasterly in part by property of Real Asset Management, Inc. and in part by property of Health Trust, Inc., southeasterly by property of Edward A. Lasalle, Jr. and southwesterly by property of Bethel Church, Inc.


Tract 3

That certain tract or parcel of land, situated in Section 21, Township 12 South, Range 7 East, within the corporate limits of the City of New Iberia, Iberia Parish, Louisiana, and being more particularly described as follows:

Commencing at the southeastern most intersection of the rights of way of North Lewis Avenue and Andre Street, thence along the easterly right of way of North Lewis Avenue in a southerly direction a distance of 775 feet to the Point of Beginning; thence South 58°49'44" East a distance of 263.75 feet to a point; thence South 31°03'49" West a distance of 230.74 feet to a point; thence North 58°40'00" West a distance of 263.75 feet to a point; thence North 31°03'47" east a distance of 230.00 feet to the Point of Beginning.

The above described tract contains 1.395 acres (60,760.960 square feet), more or less, and is designated as Parcel "B" on that certain plat of survey prepared by Simon J. Freyou, Registered Land Surveyor dated April 27, 1995 and attached to that certain Cash Sale recorded on July 28, 1995 in official records of the Parish of Iberia, State of Louisiana as COB 1096, folio 803 under Entry No. 95-5590, and is bounded, now or formerly, northwesterly by North Lewis Avenue, northeasterly by the property of Health Trust, Inc., southeasterly by property of Dauterive Hospital Corporation and southwesterly by property of Dauterive Hospital Corporation.

Exh. A

Tract 4

A certain tract of land, situated in Section 21, Township 12 South, Range 7 East, Iberia Parish, Louisiana, and being more particularly described as follows:

Commencing at a 3/4 inch iron pipe, said pipe being the southeast corner of a tract of land owned by Central Louisiana Electric Company, Inc., as shown on a plat of survey by C. Howard Fenstermaker, Jr., C.E., dated December 23, 1964 and referred to by Entry No. 131381 of the Conveyance Records of Iberia Parish, Louisiana; go North 27°35'00" East along the easterly line of said property, a distance of 489.94 feet to the Point of Beginning, said point being a 3/4 inch iron pipe (set);

Thence North 58°50'00" West a distance of 446.30 feet to a point on the westerly line of a tract of land owned by said Central Louisiana Electric Company, Inc. as shown on a plat of survey by G. K. Pratt Munson, dated March, 1954 and referred to by Entry No. 90804 of the Records of Iberia Parish, Louisiana.

Thence North 31°23'00" East along the westerly line of said tract of land surveyed by G. K. Pratt Munson, a distance of 206.20 feet;

Thence South 61°39'00" East along the northerly line of said tracts of land surveyed by G. K. Pratt Munson and C. Howard Fenstermaker, Jr., C.E., a distance of 431.80 feet;

Thence South 27°35'00" West along the easterly line of said tract of land surveyed by c. Howard Fenstermaker, Jr., C.E., a distance of 227.86 feet to the Point of Beginning, said tract containing a total of 2.186 acres.

Tract 5

That certain tract or parcel of land, situated in Section 21, Township 12 South, Range 7 East, more particularly described as follows:

A certain lot of ground, situated in the corporate limits of the City of New Iberia, Iberia Parish, Louisiana, commencing at Point A, which is the northwest corner of said tract shown on Survey of Property to be Acquired by Maurice Faugot, M.D. and Ellen Bouillion Faugot, as is more fully described hereinafter, thence South 24°05'00" West, a distance of 55.10 feet to Point B, thence South 69°20'00" East, a distance of 171.29 feet to Point C, thence North 18°55'20" East, a distance of 55.03 feet to Point D, thence North 69°20'00" West, a distance of 166.33 feet to Point A, Point of Beginning, all being more particularly described as Tract A, B, C, D, A, on the plat of survey entitled "Map Showing Survey of Property to be Acquired by Maurice Faugot, M.D. and Ellen Bouillion Faugot, located in the City of New Iberia, Parish of Iberia, State of Louisiana," dated August 11, 1986, by Aldon A. LeBlanc, Registered Land Surveyor, a copy of which is attached to Act recorded in Book 932, folio 379 under Entry No. 87-8053, Records of Iberia Parish, Louisiana.

Tract 6

A certain parcel of ground, situated in Section 21, Township 12 South, Range 7 East, SWLD, Iberia Parish, Louisiana, and in the City of New Iberia, Louisiana, commencing at Point A which is the northeast corner of said tract shown and depicted on the hereinafter referenced survey, thence South 15°54'30" West for a distance of 162.42 feet to Point B, thence North 74°25' West for a distance of 154.10 feet to Point C, thence North 18°47' East for a distance of 175.6 feet to Point De, thence South 69°20' East for a distance of 145.8 feet, returning to Point A, the Point of Origin; being bounded on the North by Andre Street, East by Mrs. Onetta Ribbeck Shine or assigns, South by Dauterive Hospital Corporation, and West by Dauterive Hospital Corporation, all as more fully described on a plat of survey by G. K. Pratt Munson, dated July 1, 1986, revised September 3, 1988 and attached to that certain Cash Sale recorded in Conveyance Book 957, folio 852 under Entry No. 88-7498 of the records of Iberia Parish, Louisiana, which parcel is shown on said plat as being a parcel for the medical office of Dr. Ned Dauterive.

Tract 7

Property at the corner of North Lewis and Andre Streets in New Iberia, Louisiana.

Being a 2 acre tract, situated in Section 21, Township 12 South, Range 7 East, Southwestern Land District, Iberia Parish, Louisiana; fronting 137 feet on the easterly side of North Lewis Street by a depth, between diverging lines of 566 feet on its northerly side and 565 feet on its southerly side and having a width at the rear of 171.4 feet; bounded North by Andre Street, separating this property from property owned by the Iberia Parish School Board, Southerly and Easterly by Dauterive Hospital, Inc., and Westerly by said North Lewis Street; being more fully set forth on plat of survey by R. B. Marie, L.S., dated 3 May 1972 and filed for record in Book 858, Page 695, Records of Iberia Parish, Louisiana.