# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PROGRESSIVE ACUTE CARE, LLC, *et al.* ) | Case No. 16-50740 |
| ) | |
| Debtors.[1] ) | Jointly Administered |
| ) | |

---

## JOINT CHAPTER 11 PLAN OF ORDERLY LIQUIDATION
## FOR PROGRESSIVE ACUTE CARE, LLC, *ET AL.*

---

| **STEFFES VINGIELLO & McKENZIE, LLC** | **SILLS CUMMIS & GROSS P.C.** |
|---|---|
| William E. Steffes, Esq. | Andrew H. Sherman, Esq. |
| bsteffes@steffeslaw.com | asherman@sillscummis.com |
| Barbara B. Parsons | One Riverfront Plaza |
| bparsons@steffeslaw.com | Newark, New Jersey 07102 |
| 13702 Coursey Blvd., Bldg. 3 | (973) 643-7000 |
| Baton Rouge, Louisiana 70817 | (973) 643-6500  Facsimile |
| (225) 751-1751 | *Co-Counsel to the Official Committee of Unsecured Creditors* |
| (225) 751-1998  Facsimile | |
| *Counsel to the Debtors* | -and- |
| | **KEAN MILLER LLP** |
| | J. Eric Lockridge (Bar Roll No. 30159) |
| | Email: eric.lockridge@keanmiller.com |
| | 400 Convention Street, Suite 700 |
| | P.O. Box 3513 (70821-3513) |
| | Baton Rouge, LA 70802 |
| | Phone: (225) 387-0999 |
| | *Co-Counsel for Official Committee of Unsecured Creditors* |

---

[1]  The Debtors in these jointly administered Chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: Progressive Acute Care, LLC (1719); Progressive Acute Care Avoyelles, LLC (7245); Progressive Acute Care Oakdale, LLC (7332); and Progressive Acute Care Winn, LLC (7149).

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1
ARTICLE I. DEFINITIONS; RULES FOR INTERPRETATION.................................. 3
    1.1     Definitions...................................................................................... 3
    1.2     Rules for Interpretation. ...................................................................... 14
    1.3     Computation of Time. ........................................................................... 15
    1.4     Appendices and Plan Documents............................................................ 15
ARTICLE II. TREATMENT OF ADMINISTRATIVE, PRIORITY TAX, AND
UNCLASSIFIED CLAIMS............................................................................. 15
    2.1     Treatment of Administrative Expense Claims......................................... 16
    2.2     Treatment of Quarterly Fees. ................................................................ 17
    2.3     Treatment of Priority Tax Claims. ......................................................... 17
ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS................. 17
    3.1     General. ............................................................................................ 17
    3.2     Classification of Claims and Equity Interests ......................................... 18
    3.3     Separate Classification of Non-Lender Secured Claims............................. 18
    3.4     Treatment of Claims Against and Equity Interests in the Debtors. ............. 18
ARTICLE IV. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
EQUITY INTERESTS .................................................................................. 22
    4.1     Unimpaired Classes of Claims and Equity Interests................................. 22
    4.2     Impaired Classes of Claims and Equity Interests. .................................... 22
    4.3     Impairment Controversies.................................................................... 22
ARTICLE V. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS. 22
    5.1     Classes Entitled to Vote. ....................................................................... 22
    5.2     Acceptance by an Impaired Class of Claims. ........................................... 23
    5.3     Confirmability and Severability of this Plan. .......................................... 23
ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN ............................. 23
    6.1     Substantive Consolidation. .................................................................. 23
    6.2     Corporate Action................................................................................ 24
    6.3     Preservation of Causes of Action .......................................................... 24
    6.4     Establishment of the Liquidation Trust and Appointment of the Liquidation Trustee. 28
    6.5     Appointment of the Debtor Representative, Vesting of Authority in the Debtor
Representative, and Revesting of the Tort Claims and Insurance Policies.............................. 28

| | | |
|---|---|---|
| 6.6 | Sources of Cash for Plan Distributions. | 29 |
| 6.7 | Use of Existing Accounts. | 29 |
| 6.8 | Cancellation of Instruments. | 29 |
| 6.9 | Dissolution of the Committee. | 29 |

**ARTICLE VII. <u>THE LIQUIDATION TRUST</u>** ......... 29

| | | |
|---|---|---|
| 7.1 | Establishment of Liquidation Trust. | 29 |
| 7.2 | Execution of the Liquidation Trust Agreement. | 29 |
| 7.3 | Liquidation Trust Assets. | 30 |
| 7.4 | Governance of Liquidation Trust. | 30 |
| 7.5 | Liquidation Trustee. | 30 |
| 7.6 | Oversight Committee. | 33 |
| 7.7 | Indemnification. | 34 |
| 7.8 | LT Reserves. | 34 |
| 7.9 | Discharge of Liquidation Trustee and Dissolution. | 34 |
| 7.10 | Taxes. | 35 |

**ARTICLE VIII. <u>INJUNCTIONS, EXCULPATION AND LIMITATIONS ON LIABILITY</u>** .......... 36

| | | |
|---|---|---|
| 8.1 | Term of Bankruptcy Injunction or Stays. | 36 |
| 8.2 | Injunction. | 37 |
| 8.3 | Exculpation. | 37 |
| 8.4 | Limitation on Liability of Liquidation Trustee and Debtor Representative. | 38 |
| 8.5 | D&PO Claims and D&O Policies | 38 |

**ARTICLE IX. <u>PLAN DISTRIBUTION PROVISIONS</u>** .......... 38

| | | |
|---|---|---|
| 9.1 | Plan Distributions. | 38 |
| 9.2 | Timing of Plan Distributions. | 39 |
| 9.3 | Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions. | 39 |
| 9.4 | Plan Distributions Subjec to Withholding and Reporting Requirements. | 39 |
| 9.5 | Manner of Payment Under the Plan. | 40 |
| 9.6 | Minimum Distributions. | 40 |
| 9.7 | Rounding. | 40 |
| 9.8 | Settlement of Claims and Controversies | 40 |
| 9.9 | Setoffs and Recoupments. | 41 |
| 9.10 | Claims Paid or Payable by Third Parties | 41 |

**ARTICLE X. <u>PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS</u>** .......... 42

16-50740 - #465  File 03/14/17  Enter 03/14/17 16:31:35  Main Document  Pg 3 of 58

| | | |
|---|---|---|
| 10.1 | Claim Objection Deadline. | 42 |
| 10.2 | Prosecution of Contested Claims. | 42 |
| 10.3 | Claims Settlement. | 42 |
| 10.4 | Entitlement to Plan Distributions upon Allowance. | 42 |
| 10.5 | Estimation of Claims. | 42 |

**ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE** ... 43

| | | |
|---|---|---|
| 11.1 | Conditions Precedent to Confirmation. | 43 |
| 11.2 | Conditions Precedent to the Occurrence of the Effective Date. | 43 |
| 11.3 | Waiver of Conditions. | 44 |
| 11.4 | Effect of Non-Occurrence of the Effective Date. | 44 |
| 11.5 | Option to Delay Occurrence of the Effective Date. | 44 |

**ARTICLE XII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ... 44

| | | |
|---|---|---|
| 12.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 44 |
| 12.2 | Claims Arising from Rejection, Expiration or Termination. | 45 |

**ARTICLE XIII. RETENTION OF JURISDICTION** ... 46

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ... 47

| | | |
|---|---|---|
| 14.1 | Lead Debtor Name and Case Name | 47 |
| 14.2 | Satisfaction of Claims. | 47 |
| 14.3 | Special Provisions Regarding Insurance Policies and Insured Claims. | 48 |
| 14.4 | Third Party Agreements; Subordination. | 49 |
| 14.5 | Service of Documents. | 49 |
| 14.6 | Headings. | 50 |
| 14.7 | Governing Law. | 50 |
| 14.8 | Exemption from Transfer Taxes. | 50 |
| 14.9 | Notice of Entry of Confirmation Order and Relevant Dates. | 50 |
| 14.10 | Interest and Attorneys' Fees. | 50 |
| 14.11 | Modification of the Plan. | 51 |
| 14.12 | Revocation of Plan. | 51 |
| 14.13 | Compliance with Tax Requirements. | 51 |
| 14.14 | Binding Effect. | 51 |
| 14.15 | Rates. | 51 |
| 14.16 | Nondischarge of the Debtors. | 52 |
| 14.17 | Extensions of Time. | 52 |

14.18     No Admissions.................................................................................................... 52

## INTRODUCTION

PAC,[2] PAC Avoyelles, PAC Oakdale, PAC Winn, and the Committee (the "Plan Proponents") hereby collectively and jointly propose the following chapter 11 plan of orderly liquidation for the resolution of all outstanding Claims against and Equity Interests in all of the Debtors in the Chapter 11 Cases.

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and operations, risk factors, a summary and analysis of this Plan, and certain related matters. Subject to certain restrictions and requirements set forth herein, including, without limitation, Sections 14.11 and 14.12 of this Plan, and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order, and the Bankruptcy Code.

**TRANSMITTED WITH THIS PLAN IS A COPY OF THE DISCLOSURE STATEMENT REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE (TOGETHER WITH ITS EXHIBITS, AND AS AMENDED FROM TIME TO TIME, THE "DISCLOSURE STATEMENT") THE PLAN PROPONENTS URGE ALL CLAIMANTS AND OTHER PARTIES IN INTEREST TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES, EXHIBITS OR LETTERS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE PLAN PROPONENTS OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THIS PLAN IS _____, CENTRAL TIME, _____, 2017, UNLESS EXTENDED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF LOUISIANA.**

**THE PLAN PROPONENTS BELIEVE THAT THIS PLAN WILL ENABLE THE ESTATES TO EFFICIENTLY LIQUIDATE THEIR ASSETS FOR THE BENEFIT OF THEIR RESPECTIVE CREDITORS AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11. ADDITIONALLY, THE PLAN PROPONENTS BELIEVE THE PLAN PRESENTS THE MOST ADVANTAGEOUS OUTCOME FOR ALL THE DEBTORS' CREDITORS AND THAT, THEREFORE, CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATES. THE PLAN PROPONENTS RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

**BY ORDER DATED _____ _____, 2017, THE BANKRUPTCY COURT APPROVED THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO PERMIT THE HOLDERS OF CLAIMS AGAINST THE DEBTORS**

---

[2] Capitalized terms otherwise undefined in this Introduction shall have the meanings subsequently ascribed to them in this Plan.

3222019 v13

TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHT TO VOTE ON THE PLAN. APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, HOWEVER, DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THIS PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THIS PLAN EXCEPT AS EXPRESSLY INDICATED THEREIN. THE DISCLOSURE STATEMENT AND PLAN WERE COMPILED FROM INFORMATION OBTAINED BY THE PLAN PROPONENTS FROM NUMEROUS SOURCES AND ARE BELIEVED TO BE ACCURATE TO THE BEST OF THEIR KNOWLEDGE, INFORMATION AND BELIEF. HOLDERS OF CLAIMS MUST RELY ON THEIR OWN EXAMINATION OF THE DEBTORS AND THE TERMS OF THIS PLAN, INCLUDING WITH RESPECT TO THE MERITS AND RISKS INVOLVED. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THIS PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THIS PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THIS PLAN. NOTHING STATED IN THE DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS. CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

SUMMARIES OF PROVISIONS OF AGREEMENTS REFERRED TO IN THIS PLAN AND THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE, AND ARE SUBJECT TO AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS PLAN OR THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THIS PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

HOLDERS OF CLAIMS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THIS PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

## ARTICLE I.

## DEFINITIONS; RULES FOR INTERPRETATION

**1.1**     **Definitions.**

As used herein, capitalized terms shall have the respective meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1     <u>20 Day Claim</u> means a Claim filed by a supplier of goods for the value of goods sold to the Debtors in the ordinary course of business and received by the Debtors within 20 days before the Petition Date entitled to priority under section 503(b)(9) and 507(a)(2) of the Bankruptcy Code.

1.1.2     <u>Administrative Bar Date</u> means December 5, 2016, the deadline to file proofs of claim in the Chapter 11 Cases with respect to certain Administrative Expense Claims, including 20 Day Claims, established by the Administrative Bar Date Order.

1.1.3     <u>Administrative Bar Date Order</u> means the Bankruptcy Court's Order establishing December 5, 2016, as the bar date for filing certain Administrative Expense Claims, including 20 Day Claims, approving the form and manner of notice thereof, and approving proof of administrative expense claim forms [Docket No. 377].

1.1.4     <u>Administrative Expense Claim</u> means a Claim (other than a Claim included in a Class under this Plan) that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including, without limitation, (i) Claims incurred by the Debtors (or their Estates) on or after the Petition Date and before the Effective Date for the actual, necessary costs and expenses of preserving the Estates, including, without limitation, Fee Claims, and (ii) 20 Day Claims.

1.1.5     <u>Affiliate</u> shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code, and when used with reference to any Debtor, shall include, but not be limited to, each of the other Debtors.

1.1.6     <u>Allowed</u>, when used

a.     with respect to any Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

b.     with respect to Equity Interests in any Debtor, means the Equity Interests in such Debtor as reflected in the stock ledger or similar register of such Debtor as of the Effective Date.

For the avoidance of doubt, to the extent a Claim is not Allowed, such Claim is still subject to objection based upon any potentially applicable rights of avoidance, setoff, or subordination, and any other grounds or defenses.

For the further avoidance of doubt, any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" under this Plan absent further Order of the Bankruptcy Court. Unless otherwise specified in this Plan or by Order of the Bankruptcy Court, "Allowed" Claims shall not, for the purposes of computation of distributions under the Plan, include interest on such Claims from and after the Petition Date.

1.1.7    <u>Assets</u> means each and every item of property and interest of the Debtors or the Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, wherever located, including, without limitation, (i) all rights, titles, and interests of the Estates in property of any kind as specified in section 541 of the Bankruptcy Code; (ii) all assets not sold or otherwise disposed of by the Debtors under the Asset Purchase Agreement; (iii) all Cash (including, without limitation, all Sale Proceeds) and Causes of Action (including, without limitation, Avoidance Actions) belonging to the Debtors or their Estates; (v) all rights in and proceeds of insurance policies applicable to the Debtors or their Estates; and (vi) any other rights, privileges, including but not limited to the attorney-client privilege, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law, belonging to the Debtors or their Estates.

1.1.8    <u>Asset Purchase Agreement</u> means the Asset Purchase Agreement dated July 14, 2016, by and among the Debtors and the Buyer's Parent, as amended from time to time.

1.1.9    <u>Asset Sale</u> means the sale of substantially all of the Debtors' assets to the Buyer.

1.1.10    <u>Assumed Contracts</u> means the contracts assumed by the Debtors under section 365 of the Bankruptcy Code pursuant to the Asset Purchase Agreement, Sale Order, or any other Order of the Bankruptcy Court.

1.1.11    <u>Assumed Leases</u> means the real and personal property leases assumed by the Debtors under section 365 of the Bankruptcy Code pursuant to the Asset Purchase Agreement, Sale Order, or any other Order of the Bankruptcy Court.

1.1.12    <u>Avoidance Actions</u> means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code, including under section 502, 542, 544, 545, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code, and any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise.

1.1.13    <u>Bankruptcy Code</u> means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

1.1.14    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Western District of Louisiana.

1.1.15    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.1.16    Bar Dates means the General Bar Date, the Administrative Claim Bar Date, and any other applicable deadline to file a proof of claim in the Chapter 11 Cases.

1.1.17    Bar Date Orders means the General Bar Date Order [Docket No. 376], which set December 5, 2016 as the General Bar Date and the Administrative Claims Bar Date Order, which set December 5, 2016 as the Administrative Claims Bar Date [Docket No. 377].

1.1.18    BFB means Business First Bank.

1.1.19    BFB Adversary Proceeding means that certain litigation commenced by the Committee against BFB and the Debtors, seeking, *inter alia*, to avoid BFB's liens, determine the extent, validity and priority of BFB's liens, and surcharge BFB's collateral, if any, and styled Official Committee of Unsecured Creditors v. Business First Bancshares, Inc., *et al*. (In re Progressive Acute Care, LLC), Adv. Proc. No. 16-05023.

1.1.20    BFB Dauterive Claim means any and all claims that BFB holds or may hold against the PAC Dauterive Estate.

1.1.21    BFB Distribution Amount means a maximum of $10,300,000 that will be distributed to BFB under the Plan on account of the BFB Secured Claim and the BFB Dauterive Claim.

1.1.22    BFB Secured Claim means the Claim filed against the Debtors by BFB in the Chapter 11 Cases.

1.1.23    Bid Procedures Order means the order of the Bankruptcy Court approving procedures for the Sale of the Debtors' Assets and scheduling the auction with respect thereto [Docket No. 226].

1.1.24    Business Day means any day other than a Saturday, a Sunday, a "legal holiday" (as defined by Bankruptcy Rule 9006(a)), or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.25    Buyer means Oakdale Real Estate Holdings, LLC, CLHG-Oakdale LLC, Avoyelles Real Estate Holdings, LLC, CLHG-Avoyelles LLC, Winn Real Estate Holdings, LLC, and CLHG-Winn LLC, each a Louisiana limited liability company.

1.1.26    Buyer's Parent means Central Louisiana Hospital Group, LLC, a Louisiana limited liability company.

1.1.27    Cash means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

1.1.28     Causes of Action means all claims, actions, causes of action, choses in action, liabilities, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, foreseen, unforeseen, asserted, assertable directly or derivatively, arising in law, equity or otherwise, that are or may be pending on the Effective Date or that may be instituted or prosecuted by the Liquidation Trustee on behalf of the Estates, or by the Debtor Representative on behalf of the Debtors, against any Person, whether asserted or unasserted as of the Effective Date, including, without limitation: (i) the right to object to Claims; (ii) all avoidance powers, actions (including all claims and causes of action arising under chapter 5 of the Bankruptcy Code), rights, remedies or affirmative defenses under the Bankruptcy Code and state law; and (iii) all Tort Claims. Any and all Causes of Action are preserved under the Plan.

1.1.29     Chapter 11 Cases means the cases commenced on the Petition Date by the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and being jointly administered by the Bankruptcy Court under the lead case styled In re Progressive Acute Care, LLC, Case No. 16-50740.

1.1.30     Claim shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.  For the avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtors if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtors have received one or more demands for payment for injuries or damages arising from such acts or omissions.

1.1.31     Claim Objection Deadline means the deadline for filing objections to Claims as set forth in Section 10.1 of this Plan.

1.1.32     Class means a category of Claims or Equity Interests set forth in Article III of this Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.33     Committee means the official committee of unsecured creditors appointed in the Chapter 11 Cases by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code.

1.1.34     Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.35     Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.1.36     Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.37    Contested, when used

      a.     with respect to a Claim, means such Claim

          i.     to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed;

          ii.     if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan;

          iii.     if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or

          iv.     as to which an objection has been or may be filed on or before the Claim Objection Deadline; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and

      b.     with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer register as of the Effective Date.

1.1.38    D&O Claims means any and all rights and claims against the Debtors' current and/or former directors and officers for, *inter alia*, breach of fiduciary duty and the proceeds of any such claims, including any Insurance Policies associated therewith.

1.1.39    D&O Policies means, collectively, any "Directors and Officers" and other fiduciary liability insurance policies in which any of the Debtors has an interest or under which any of the Debtors is named as an insured or additional insured.

1.1.40    Debtors means, collectively, Progressive Acute Care, LLC; Progressive Acute Care Avoyelles, LLC; Progressive Acute Care Oakdale, LLC; and Progressive Acute Care Winn, LLC.

1.1.41    Debtor in Possession means any of the Debtors, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.1.42    Debtor Representative means the debtor representative selected to serve pursuant to Section 6.5 of this Plan. The identity of the Debtor Representative shall be filed with the Bankruptcy Court as a Plan Document no later than three (3) Business Days after entry of the Bankruptcy Court's order approving the adequacy of the Disclosure Statement.

1.1.43   Disallowed, when used with respect to a Claim, means all or such part of a Claim that has been disallowed or released by a Final Order, operation of law, written release or settlement, the provisions of this Plan, or otherwise, or withdrawn by the holder of the Claim.

1.1.44   Disclosure Statement means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto.

1.1.45   Disclosure Statement Order means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

1.1.46   Effective Date means, with respect to each Debtor, a date selected by such Debtor which shall be a Business Day that is no later than three (3) days after all of the conditions specified in Section 11.2 have been satisfied or waived in accordance with Section 11.3 of this Plan.

1.1.47   Equity Interest means (i) any outstanding ownership interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in any Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation, and (ii) any Claim against any of the Debtors that is subordinated and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

1.1.48   Estate(s) means, individually or collectively, as applicable, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.1.49   Estate Cash means, all Cash of the Debtors and the Estates as of the Effective Date, including, without limitation, the Estate Proceeds and the Wind-Down Amounts Reserve (to the extent the Cash comprising the Wind-Down Amounts Reserve is not already accounted for by the Estate Proceeds).

1.1.50   Estate Proceeds means the Sale Proceeds, plus the proceeds of any sale or liquidation of the Excluded Assets.

1.1.51   Excluded Assets means all assets of the Debtors not sold or otherwise transferred to the Buyer under Section 2.2 of the Asset Purchase Agreement.

1.1.52   Exculpated Parties means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) the Debtors; (ii) the Committee or a member of the Committee; or (iii) Professional Persons, to the extent such parties are or were acting in such capacity on behalf of any of the Persons identified in (i) or (ii) above on or after the Petition Date.

1.1.53    Fee Application means an application for allowance and payment of a Fee Claim.

1.1.54    Fee Claim means a Claim of a Professional Person or a Claim for substantial contribution or reimbursement of expenses incurred as a member of the Committee pursuant to section 503(b) of the Bankruptcy Code.

1.1.55    Final Order means an order or judgment of the Bankruptcy Court (or any other court or adjudicative body of competent jurisdiction) entered on the docket of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, motion for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or any other court or adjudicative body) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

1.1.56    FMP Payments means supplemental payments to which one or more of the Hospitals is entitled to receive from the Louisiana Medicaid managed care organizations and which represent Excluded Assets.

1.1.57    FMP Payment Settlement Agreement means that certain settlement agreement, fully executed on March 6, 2017, between the Debtors and certain of the Buyers, resolving the parties' dispute over FMP Payments due under the Asset Sale.

1.1.58    General Bar Date means December 5, 2016, the general deadline to file proofs of claim in the Chapter 11 Cases (or January 5, 2017, with respect to governmental units) established by the Bar Date Orders.

1.1.59    General Unsecured Claim means any Claim against the Debtors that is not an Administrative Expense Claim (including Fee Claims), a fee payable pursuant to section 1930 of title 28 of the United States Code, a Priority Tax Claim, a Priority Non-Tax Claim, a Non-Lender Secured Claim, a Secured Claim, an Insured Claim, or an Intercompany Claim, and shall not include Disallowed Claims.

1.1.60    Guarantees means collectively the Guaranty of Hurlburt, Guaranty of Rissing and Guaranty of Thompson.

1.1.61    Guaranty of Hurlburt means that Commercial Guaranty by Michael Hurlburt in favor of BFB dated April 30, 2013.

1.1.62    Guaranty of Rissing means that Commercial Guaranty by Daniel J. Rissing in favor of BFB dated April 30, 2013.

1.1.63    Guaranty of Thompson means that Commercial Guaranty by Wayne D. Thompson in favor of BFB dated April 30, 2013.

1.1.64    Hospitals means the Winn Parish Medical Center located in Winnfield, Louisiana, Avoyelles Hospital located in Marksville, Louisiana, and Oakdale Community Hospital located in Oakdale, Louisiana, each of which were owned and operated by one of the Debtors on the Petition Date.

1.1.65    Insider means a Person that would fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code.

1.1.66    Insurance Policies means, collectively, any policies of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belong to or included or include any of the Debtors as a named insured, additional insured, or beneficiary, including, without limitation, the D&O Policies.

1.1.67    Insured Claim means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein the Debtor is an insured or beneficiary of the coverage of any of the Debtors or any other Person.

1.1.68    Intercompany Claim means a Claim held by any Debtor against any other Debtor.

1.1.69    Internal Revenue Code means the Internal Revenue Code of 1986, as amended, codified at title 26 of the United States Code, together with any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

1.1.70    IRS means the Internal Revenue Service.

1.1.71    Liquidation Trust means the trust established pursuant to Article VII of the Plan.

1.1.72    Liquidation Trust Agreement means the agreement, in a form reasonably acceptable to the Debtors and the Committee, to be dated as of the Effective Date establishing the terms and conditions of the Liquidation Trust, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

1.1.73    Liquidation Trust Assets means the Debtors' and the Estates' right, title and interest in all of the Assets, including, without limitation, the Excluded Assets, the Estate Cash, and the Avoidance Actions, and the proceeds of any Tort Claims and Insurance Policies applicable thereto.

1.1.74    Liquidation Trust Beneficiaries means all individuals and entities entitled to a Plan Distribution from the Liquidation Trust.

1.1.75     Liquidation Trust Expenses means all reasonable costs and expenses incurred on or after the Effective Date by the Liquidation Trustee and the Oversight Committee associated with the implementation and administration of the Liquidation Trust and the Plan.

1.1.76     Liquidation Trust Indemnified Parties has the meaning set forth in Section 7.7 of this Plan.

1.1.77     Liquidation Trustee means the trustee (and any successor trustee) selected to serve trustee pursuant to Article VII of this Plan and under the Liquidation Trust Agreement. The identity of the initial trustee shall be filed with the Bankruptcy Court as a Plan Document no later than three (3) Business Days after entry of the Bankruptcy Court's order approving the adequacy of the Disclosure Statement.

1.1.78     Loan Agreement means the Business Loan Agreement (Asset Based), dated April 30, 2013, by and between the Debtors and BFB, as amended from time to time.

1.1.79     Loan Documents means the Loan Agreement, the Notes, the Mortgages, and Guarantees, together with all documents, company resolutions, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

1.1.80     LT Reserve means any reserve established by the Liquidation Trustee on account of Contested Claims held by any Liquidation Trust Beneficiary that, if Allowed, would entitle such Liquidation Trust Beneficiary to a Plan Distribution.

1.1.81     Mortgages means collectively the Multiple Indebtedness Mortgage by PAC Avoyelles, PAC Winn and PAC Oakdale dated April 30, 2013, in favor of BFB, the Commercial Security Agreement by PAC, dated April 30, 2013, in favor of BFB, the Commercial Security Agreement by PAC Avoyelles, dated April 30, 2013, in favor of BFB, the Commercial Security Agreement by PAC Oakdale, dated April 30, 2013, in favor of BFB, and the Commercial Security Agreement by PAC Winn, dated April 30, 2013, in favor of BFB.

1.1.82     Non-Lender Secured Claim means a Claim, other than the BFB Secured Claim, that is (a) secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) asserted against any Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; or (c) deemed or treated under the Plan as a Non-Lender Secured Claim.

1.1.83     Notes means collectively a promissory note in the principal amount of $20,700,000 between the Debtors and PAC Dauterive as borrowers and BFB as lender dated April 30, 2013 and a promissory note in the principal amount of $3,000,000 between the Debtors and PAC Dauterive as borrowers and BFB as lender dated April 30, 2013.

16-50740 - #465   File 03/14/17   Enter 03/14/17 16:31:35   Main Document   Pg 16 of 58

1.1.84    Notice of Confirmation means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Noticing Agent to holders of Claims and Equity Interests.

1.1.85    Noticing Agent means Garden City Group, LLC, retained as noticing agent pursuant to 28 U.S.C. § 156(c) in the Chapter 11 Cases [Docket No. 47].

1.1.86    Oversight Committee means the committee consisting of members selected by the Committee that are or represent Liquidation Trust Beneficiaries, as set forth in Section 7.6 of this Plan, established pursuant to Article VII of this Plan to advise and assist the Liquidation Trustee in the implementation and administration of the Liquidation Trust pursuant to the Liquidation Trust Agreement and this Plan.  A list of the proposed members of the Oversight Committee shall be filed with the Bankruptcy Court as a Plan Document.

1.1.87    PAC means Progressive Acute Care, LLC, a Debtor in the Chapter 11 Cases.

1.1.88    PAC Avoyelles means Progressive Acute Care Avoyelles, L.L.C., a Debtor in the Chapter 11 Cases.

1.1.89    PAC Dauterive means Progressive Acute Care Dauterive, L.L.C., the Chapter 7 debtor in that case pending before the Bankruptcy Court in Case Number 16-50739.

1.1.90    PAC Dauterive Estate means the Chapter 7 bankruptcy estate of PAC Dauterive in that case pending before the Bankruptcy Court in Case Number 16-50739.

1.1.91    PAC Oakdale means Progressive Acute Care Oakdale, L.L.C., a Debtor in the Chapter 11 Cases.

1.1.92    PAC Winn means Progressive Acute Care Winn, L.L.C., a Debtor in the Chapter 11 Cases.

1.1.93    Person means an individual, corporation, partnership, limited liability company, limited liability partnership, joint stock company, joint venture, trust, estate, unincorporated association, unincorporated organization, or any government, governmental entity, or political subdivision, department, agency, or instrumentality thereof, or any other entity.

1.1.94    Petition Date means May 31, 2016, the date on which the Debtors commenced the Chapter 11 Cases.

1.1.95    Plan means this chapter 11 plan for the Debtors filed in the Chapter 11 Cases, including all supplements, appendices and schedules hereto, either in their present form or as same may be amended, supplemented or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.1.96    Plan Distribution means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim.

1.1.97    Plan Distribution Date means (i) with respect to any Claim other than an Unsecured Claim, (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, and (ii) with respect to any Unsecured Claim, such date(s) that the Liquidation Trustee determines in its reasonable discretion.

1.1.98    Plan Documents means the compilation of documents and forms of documents, schedules and exhibits to the Plan that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4 of the Plan including, without limitation, the Liquidation Trust Agreement.

1.1.99    Plan Proponents means the Debtors and the Committee (each, a "Plan Proponent").

1.1.100    Priority Non-Tax Claim means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Non-Lender Secured Claims, BFB Secured Claim, Administrative Expense Claims and Tax Claims.

1.1.101    Priority Reserve means the Estate's Cash in the amount of $1,000,000 reserved for the payment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Non-Lender Secured Claims.

1.1.102    Priority Tax Claim means any secured or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.103    Professional Person means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.1.104    Pro Rata Share means the proportion that an Allowed Claim or an Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Liquidation Trustee; or (b) as determined or estimated by the Bankruptcy Court.

1.1.105    Sale Order means the Order of the Bankruptcy Court approving the Asset Sale [Docket No. 322].

1.1.106    Sale Proceeds means the total consideration received by the Debtors from the Buyer in the Asset Sale.

1.1.107    Schedules means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been

or may be amended or supplemented by the Debtors or the Debtor Representative from time to time in accordance with Bankruptcy Rule 1009.

1.1.108    Securities Act means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

1.1.109    Settlement Agreement means the Plan Term Sheet entered into by and among the Debtors, BFB and the Committee and approved by the Settlement Agreement Approval Order.  Except as set forth in this Plan, all terms of the Settlement Agreement, including the dollar-for-dollar reduction of the BFB Distribution Amount in light of any net recovery based on BFB Guarantor Claims (as defined in the Settlement Agreement), are incorporated into this Plan by reference.

1.1.110    Settlement Agreement Approval Order means the Bankruptcy Court's Sixth Consent Order Authorizing the Interim Use of Cash Collateral, Approving Payments Pursuant to a Plan Term Sheet and Granting Related Relief [Docket No 424].

1.1.111    Tort Claims means any and all claims of the Debtors based on any tort, including, but not limited to D&O Claims.

1.1.112    Voting Deadline means the deadline established by an Order of the Bankruptcy Court for voting to accept or reject the Plan.

1.1.113    Wind-Down Budget means the budget attached as Schedule 1 to the Disclosure Statement.

1.1.114    Wind-Down Amounts means $_____ as set forth in the Wind-Down Budget.

1.1.115    Wind-Down Amounts Reserve means the Cash reserve set aside on the Effective Date, as determined by the Debtors, in consultation with the Committee, to adequately provide for the payment of any Wind-Down Amounts that remain unpaid, which reserve shall be subject to, and consistent with, the Wind-Down Budget.

## 1.2    Rules for Interpretation.

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and terms denoting one gender shall include the other gender; (b) the Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous; (c) any reference in this Plan to a contract, instrument, release, or other agreement or document attached as an Exhibit to this Plan or included in the Plan Documents being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (e) any reference to a Person as a holder of a Claim or Equity Interest includes that Person's successors and assigns; (f) all references in this Plan to Sections and Articles are references to Sections and

Articles of or to this Plan or the Plan Documents, as the same may be amended, waived or modified from time to time; (g) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents; (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (k) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

**1.3**     **Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, and if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

**1.4**     **Appendices and Plan Documents.**

All appendices to this Plan and the Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the Voting Deadline.  Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, at http://cases.gcginc.com/ProgressiveAcuteCare/key.php or by a written request sent to:

**STEFFES VINGIELLO & McKENZIE, LLC**
13702 Coursey Blvd., Bldg. 3
Baton Rouge, Louisiana 70817
Attn: Barbara B. Parsons
(225) 751-1998  Facsimile

**ARTICLE II.**

**TREATMENT OF ADMINISTRATIVE,
PRIORITY TAX, AND UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified for purposes of this Plan or for the

purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code, respectively. All Administrative Expense Claims and Priority Tax Claims shall instead be treated separately as unclassified Claims along with certain other unclassified Claims under the terms set forth in this Article II.

**2.1    Treatment of Administrative Expense Claims.**

Administrative Expense Claims shall be treated as follows, as applicable:

(a)    Time for Filing.

All holders of Administrative Expense Claims (other than certain claims, including Fee Claims, excepted from the Administrative Bar Date under the Administrative Bar Date Order) were required to file and serve proofs of claim with respect to their Administrative Expense Claims by the Administrative Bar Date, **December 5, 2016. Failure to timely file and serve a proof of claim with respect to any such Administrative Expense Claim in accordance with the Administrative Bar Date Order resulted in the Administrative Expense Claim being forever barred and discharged, and no distribution shall be made under this Plan on account of any such barred and discharged Claim.**

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged, and no distribution shall be made under this Plan on account of any such barred and discharged Claim.**

(b)    General.

Except to the extent any Person entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim on the later of (i) the Effective Date or (ii) the date of entry of a Final Order determining and allowing such Claim as an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim.

For the avoidance of doubt, no Administrative Expense Claim that remains subject to objection on or before the Claim Objection Deadline (i.e., such Administrative Expense Claim is Contested) shall receive a distribution under this Plan unless and until the Liquidation Trustee determines that no objection will be filed with respect to such Claim. Upon such a determination or agreement between the Liquidating Trustee and the holder of any Administrative Expense Claim, any such Administrative Expense Claim shall become Allowed and paid by the Liquidating Trust. Consistent with Section 7.8 of this Plan, the Liquidation Trustee will establish Cash reserves sufficient to satisfy potential Plan Distributions to holders of Administrative Expense Claims that are Contested.

If the Debtors' records reflect that the holder of an administrative expense claim received payments from the Debtors during the ninety (90) days (or in the case of insiders, one (1) year) before the Petition Date, that holder's claim will not become an Allowed Administrative Expense Claim until the holder's potential preference liability has been resolved.

    (c)    <u>Fee Claims</u>.

A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 2.1(a) shall become an Allowed Administrative Expense Claim only to the extent allowed by Order of the Bankruptcy Court. All Allowed Fee Claims shall be treated as Allowed Administrative Expense Claims as set forth in Section 2.1(b) above, or shall be paid on such other terms as may be agreed upon in writing by the holder of the applicable Claim.

**2.2**    **<u>Treatment of Quarterly Fees.</u>**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees arising after the Effective Date shall be an administrative expense of the Liquidation Trust and shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.

**2.3**    **<u>Treatment of Priority Tax Claims.</u>**

At the election of the Liquidation Trustee, each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Allowed Priority Tax Claim (a) payments in Cash, in regular installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the amount of such Allowed Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim or that is less favorable than the treatment provided to the most favored General Unsecured Claims under the Plan.

**ARTICLE III.**

**<u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>**

**3.1**    **<u>General.</u>**    Pursuant to sections 1122 and 1123 of the Bankruptcy Code, all Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular class only to the extent that the Claim or Equity Interest qualifies within the description of that class, and shall be deemed classified in a different class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different class. A Claim or Equity Interest is in a particular class only to the extent that such Claim or Equity Interest is Allowed in that class and has not been paid or otherwise satisfied prior to the Effective Date. In no event shall any holder

of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such holder's Claim.

**3.2** **Classification of Claims and Equity Interests**

The following chart assigns a number and letter to each class against the Debtors for purposes of identifying each separate class:

| Class | Claim or Equity Interest |
|-------|--------------------------|
| 1 | Priority Non-Tax Claims |
| 2 | Non-Lender Secured Claims |
| 3 | BFB Secured Claim |
| 4 | General Unsecured Claims |
| 5 | Intercompany Claims |
| 6 | Equity Interests |

**3.3** **Separate Classification of Non-Lender Secured Claims.**

Although Non-Lender Secured Claims against the Debtors have been placed in one category for purposes of nomenclature, each such Non-Lender Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions (to be designated as Class 2A, 2B, 2C, etc.).

**3.4** **Treatment of Claims Against and Equity Interests in the Debtors.**

The classes of Claims against and Equity Interests in the Debtors shall be treated under the Plan as follows:

(a)    Class 1 – Priority Non-Tax Claims.

Each holder of an Allowed Priority Non-Tax Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable and contractual rights of each holder of an Allowed Priority Non-Tax Claim with respect to such Claim shall remain unaltered, except as provided in sections 1124(2)(A)-(E) of the Bankruptcy Code, and such holder of an Allowed Priority Non-Tax Claim shall be paid Cash in an amount equal to its Allowed Priority Non-Tax Claim on the Plan Distribution Date.

(b)    Class 2 – Non-Lender Secured Claims.

In the sole discretion of the Liquidation Trustee, each holder of an Allowed Non-Lender Secured Claim shall be treated in one of the following ways (for the avoidance of doubt, all holders of Allowed Non-Lender Secured Claims need not be treated in the same way as long as each is treated in one of the following ways):

(1) on the Effective Date, the legal, equitable, and contractual rights of each holder of an Allowed Non-Lender Secured Claim shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Non-Lender Secured Claim to demand or receive payment of such Allowed Non-Lender Secured Claim before the stated maturity of such Allowed Non-Lender Secured Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

(2) on the Effective Date, the holder of an Allowed Non-Lender Secured Claim shall (i) retain a lien securing such Allowed Non-Lender Secured Claim and (ii) receive deferred Cash payments from the Liquidation Trust totaling at least the value of such Allowed Non-Lender Secured Claim as of the Effective Date;

(3) on the Effective Date, the collateral securing such Allowed Non-Lender Secured Claim shall be surrendered to the holder of such Allowed Non-Lender Secured Claim in full satisfaction of such Allowed Non-Lender Secured Claim; or

(4) the holder of an Allowed Non-Lender Secured Claim shall be paid Cash in an amount equal to the value of such holder's Allowed Non-Lender Secured Claim, on or before the later of (i) the Plan Distribution Date and (ii) the date that is ten (10) Business Days after the entry of a Final Order allowing such Claim as a Non-Lender Secured Claim, or as soon thereafter as practicable. To the extent the collateral securing an Allowed Non-Lender Secured Claim has been or is sold pursuant to an Order of the Bankruptcy Court, the amount paid to the holder of such Allowed Non-Lender Secured Claim pursuant to the preceding sentence shall be net of the costs of sale of such collateral and otherwise subject to the rights of the Debtors or the Liquidation Trustee pursuant to section 506(c) of the Bankruptcy Code.

The failure of any party to object to any Non-Lender Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Debtors or the Liquidation Trustee to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of such Claim.

Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition liens on property of the Debtors held with respect to an Allowed Non-Lender Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Claim is satisfied, at which time such lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtors or the Liquidation Trustee, as the case may be, may condition delivery of any final payment upon receipt of an executed release of the lien. Any and all liens securing any Non-Lender Secured Claim that is not Allowed shall be released, shall be

deemed null and void, and shall be unenforceable for all purposes. Upon satisfaction or disallowance of a Non-Lender Secured Claim, the holder of a Non-Lender Secured Claim hereby authorizes the Liquidation Trustee to file any UCC termination statements necessary to effect termination of any lien securing a Non-Lender Secured Claim. Nothing in this Plan shall preclude the Debtors or the Liquidation Trustee from challenging the validity of any alleged lien on any asset of the Debtors or the value of the property that secures any alleged lien.

Treatment of an Allowed Non-Lender Secured Claim in accordance with the foregoing shall not affect any Allowed General Unsecured Claim held by the same claimant that is a deficiency claim under section 506 of the Bankruptcy Code.

(c)  No lien with respect to any Non-Lender Secured Claim shall attach to any property sold free and clear pursuant to the Asset Purchase Agreement or any other applicable purchase agreement.

(d)  <u>Class 3 – BFB Secured Claim</u>.

The holder of the BFB Secured Claim shall be treated as follows:

(1)  on the Effective Date, the BFB Secured Claim shall be Allowed in the amount of $10,___,___ (principal plus interest and attorneys' fees through the Confirmation Date);

(2)  on the Effective Date, BFB shall fully and irrevocably assign its rights to distributions in connection with the BFB Secured Claim and the BFB Dauterive Claim *other* than the BFB Distribution Amount to the Liquidation Trust;

(3)  BFB shall receive distributions pursuant to this Plan in the maximum amount of the BFB Distribution Amount according to the terms and conditions of this Plan and the Settlement Agreement, including the following:

   i.  as of January 30, 2017, BFB has received payment of $9,500,000 on account of the BFB Distribution Amount, and such payments shall not be subject to dispute, claim, contest or challenge;

   ii.  to the extent the BFB Distribution Amount remains unpaid, upon the Liquidation Trustee's receipt of the FMP Payments, the first $100,000 of such funds received by the Liquidation Trustee will be distributed to BFB on account of the BFB Distribution Amount (to the extent not otherwise paid prior to the Effective Date);

   iii.  to the extent the total amount of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Non-Lender Secured Claims is less than $1 million, one half of the remaining balance in the Priority Reserve will be distributed to BFB on account of the BFB Distribution Amount and the remainder to the Liquidation Trust;

iv.      one half of each distribution made from the Liquidation Trust shall be paid on account of the BFB Distribution Amount until the BFB Distribution Amount has been paid in full

v.      any net recovery based on the Guarantees will be applied on account of the BFB Distribution Amount;

vi.      one half of any net recovery based on the BFB Dauterive Claim will applied on account of the BFB Distribution Amount and the remainder will be allocated to the Liquidation Trust; and

vii.      any payments received by BFB under subsections (i) through (vi) above which in the aggregate exceed the BFB Distribution Amount will be promptly turned over by BFB to the Liquidation Trust.

(4)      During the period between the Confirmation Date and the Effective Date, the BFB Adversary Proceeding will be stayed and held in abeyance. On the Effective Date, the BFB Adversary Proceeding will be dismissed with prejudice;

(5)      On the Effective Date, the Committee and the Debtors' Estates shall be deemed to have fully and irrevocably waived and released any right to seek recovery of payments made to BFB pursuant to the consent orders regarding conditional disbursements of funds, entered on December 7, 2016 [Docket No. 408] and January 5, 2017 [Docket No. 429].

(e)      <u>Class 4 – General Unsecured Claims</u>.

The holder of the Allowed General Unsecured Claim shall receive in satisfaction of its Allowed General Unsecured Claim on the Plan Distribution Date Cash in an amount equal to such holder's Pro Rata Share of the Liquidation Trust Assets remaining available for distribution after Cash distributions from such Assets on account of the BFB Distribution Amount.

(f)      <u>Class 5 – Intercompany Claims</u>.

On the Effective Date, all Intercompany Claims will be extinguished, and no holder of an Intercompany Claim will receive or retain any property or rights under the Plan on account of such Claim.

(g)      <u>Class 6 – Equity Interests</u>.

All Equity Interests shall be canceled effective as of the Effective Date, and no holder of an Equity Interest shall receive or retain any property or rights under this Plan on account of its Equity Interests.

Notwithstanding anything to the contrary, including without limitation, the cancellation and extinguishment of the Equity Interests pursuant to this Plan and the deemed substantive consolidation of the assets and liabilities of the Debtors, each Debtor shall continue to exist as a separate corporate entity after the Effective Date solely for the purpose of implementing the Plan

unless and until such Debtor is dissolved in accordance with applicable state law pursuant to Section 6.5 hereof.

**ARTICLE IV.**

**IDENTIFICATION OF IMPAIRED
CLASSES OF CLAIMS AND EQUITY INTERESTS**

**4.1**      **Unimpaired Classes of Claims and Equity Interests.**

The following Classes are not impaired under the Plan:

(a)      Class 1 – Priority Non-Tax Claims.

**4.2**      **Impaired Classes of Claims and Equity Interests.**

The following Classes are impaired under the Plan:

(a)      Class 2 – Non-Lender Secured Claims.

(b)      Class 3 – BFB Secured Claim.

(c)      Class 4 – General Unsecured Claims.

(d)      Class 5 – Intercompany Claims.

(e)      Class 6 – Equity Interests.

**4.3**      **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**ARTICLE V.**

**ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE
CLASSES OF CLAIMS OR EQUITY INTERESTS**

**5.1**      **Classes Entitled to Vote.**

Class 1 is not impaired under the Plan, and the holders of Claims in such class are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

Classes 2, 3 and 4 are impaired under the Plan, and the holders of Claims in such classes are entitled to vote to accept or reject the Plan.

Classes 5 and 6 are impaired and will not receive or retain any property under the Plan, and the holders of Claims in such classes are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**5.2**     **Acceptance by an Impaired Class of Claims.**

5.2.1     Pursuant to section 1126(c) of the Bankruptcy Code, an impaired class of Claims shall have accepted the Plan if, after excluding any Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims actually voting in such class have voted to accept such Plan.

**5.3**     **Confirmability and Severability of this Plan.**

5.3.1     Cramdown.  If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims and Equity Interests that is impaired under, and has not accepted, the Plan.

5.3.2     Reservation of Rights.  Subject to Sections 14.11 and 14.12 of this Plan, the Plan Proponents reserve the right to modify or withdraw this Plan, in its entirety or in part, for any reason.  In addition, and also subject to Sections 14.11 and 14.12 of this Plan, should this Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of this Plan to the contrary, the Plan Proponents reserve the right to reclassify Claims or Equity Interests or otherwise amend, modify or withdraw this Plan in its entirety or in part.

5.3.3     Severability of Plan Provisions. If any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1**     **Substantive Consolidation.**

The Plan shall serve as a motion by the Plan Proponents for entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including voting and distribution. As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Equity Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors. The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan. Allowed Claims held against one Debtor will be satisfied from the Assets of all Debtors and the Estates, and each Claim against a Debtor will be treated as a Claim against the consolidated Estate of all Debtors for all purposes including, but not limited to, voting and distribution; provided, however, that no Claim will receive value in excess of 100% of the Allowed amount of such Claim under the Plan.

**6.2    Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtors, the Liquidation Trustee, and the Debtor Representative, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan and (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents).

**6.3    Preservation of Causes of Action**

Except as otherwise provided in the Plan, each Cause of Action of any Debtor shall be preserved and, along with the exclusive right to commence, pursue, and enforce such Cause of Action in any appropriate court or tribunal, shall vest exclusively in the Debtor Representative and Liquidation Trust/Liquidation Trustee (as applicable) as of the Effective Date.

Unless a claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised, settled or transferred in the Plan or any other Final Order, the Debtors, Debtor Representative, and Liquidation Trustee, as applicable, expressly reserve such claim or Cause of Action for later pursuit by the Debtor or Liquidation Trustee, as applicable, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon, after, or as a result of the Confirmation Date or Effective Date of the Plan, the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Debtors, Liquidation Trustee, and Debtor Representative, as applicable, expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors, as trustees or representatives for or on behalf of the creditors, not so specifically and expressly waived, relinquished, released, compromised, settled

or transferred that are alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or codefendants in such lawsuits.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Debtor Representative or the Liquidation Trustee subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised, settled or transferred, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtors' Schedules, or (d) such Person's scheduled Claim has been objected to by the Debtor Representative or the Liquidation Trustee or has been identified by the Debtors as disputed, contingent, or unliquidated.

**No Person may rely on the absence of a specific reference in the Plan or this Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Liquidation Trustee or another applicable party will not pursue any and all available Causes of Action against them. The Debtors, the Liquidation Trustee, the Estates and the Debtor Representative expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise explicitly provided in the Plan**.

The retained claims and Causes of Action, include, without limitation:

• Causes of Action, including Avoidance Actions, as defined in the Plan;

• Objections to Claims and Equity Interests under the Plan;

• Any and all litigation, claims, or Causes of Action of the Debtors and any rights, suits, damages, remedies, or obligations, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, relating to or arising from the acts, omissions, activities, conduct, claims, or Causes of Action listed or described in the Plan, Disclosure Statement, or the Confirmation Order;

• Any other litigation, claims or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses, assets or operations or otherwise affecting the Debtors.

• Possible claims against vendors, customers or suppliers for warranty, indemnity, back charge, set-off issues, overpayment or duplicate payment issues and collections and accounts receivables matters;

• Possible claims against utilities or other Persons or parties for wrongful or improper termination of services to the Debtors;

• Possible claims for any breaches or defaults arising from the failure of any Persons or parties to fully perform under contracts with the Debtors before the assumption or rejection of the subject contracts;

• Possible claims for deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, factor or other Person;

• Possible claims for damages or other relief against any party arising out of environmental, asbestos and product liability matters;

• Actions against insurance carriers relating to coverage, indemnity or other matters;

• Counterclaims and defenses relating to notes or other obligations;

• Possible claims against local, state and federal taxing authorities (including, without limitation, any claims for refunds of overpayments);

• Contract, tort, or equitable claims which may exist or subsequently arise;

• Any claims of the Debtors arising under Section 362 of the Bankruptcy Code;

• Equitable subordination claims arising under Section 510 of the Bankruptcy Code or other applicable law;

• Any and all claims arising under chapter 5 of the Bankruptcy Code and all similar actions under applicable law, including, but not limited to, preferences under Section 547 of the Bankruptcy Code, turnover Claims arising under Sections 542 or 543 of the Bankruptcy Code, and fraudulent transfers under Section 548 of the Bankruptcy Code, including but not limited, to any transfers listed the Debtors' Statements of Financial Affairs;

• Any derivative Causes of Action, of the Debtors pursuant to the Bankruptcy Code or any other statute or legal theory or theory under equity.

• Any and all claims arising from underpayments or other payments owed to any of the Debtors by any debtor, payor, or obligor, including any such Medicare or Medicaid amounts (including any payments due for the Hospitals' 2015 CMS Medicare cost reports) or FMP Payment amounts.

Without limiting, and in addition to, the foregoing reservations of claims and Causes of Actions, the Debtors, Debtor Representative, and Liquidating Trust/Liquidating Trustee expressly reserve and retain any and all past, present and future legal and equitable claims and Causes of Action (including any derivative Causes of Action) against any former or current director or officer of one or more of the Debtors, as well as direct action or other claims against their liability insurers, arising under state or other non-bankruptcy law or arising under the Bankruptcy Code, in these Bankruptcy Cases, or in any way related to these Bankruptcy Cases, or under and/or pursuant to any statute or legal or equitable theory that is in any manner arising from, connected with or related to any act or omission of such director or officer that occurred prior to the Effective Date, including but not limited to, claims and Causes of Action for breach

of fiduciary duty, violations of applicable federal or state securities law, negligence, gross negligence, willful misconduct, misrepresentation, omission, mismanagement, waste, fraud, bad faith, tortious interference with contract, detrimental reliance, including but not limited to, any damages allowed by law or equity, including compensatory, punitive and anticipated future damages, plus all costs including attorney's fees, court costs, and expert witness fees.  Such claims and Causes of action include those arising in connection with or relating to any of the following:

- Facts and circumstances surrounding the purchase and financing of the Dauterive Hospital and incurring of debt and granting of mortgages on behalf of the Debtors to finance the purchase, including:

  - Acquiring Dauterive Hospital from Hospital Corporation of America in April 2013.

  - Causing the Debtors to become jointly and severally liable for the repayment of debt of $23.7 million used by the Debtors (1) to pay off outstanding debt on the Debtor's line of credit with BFB ($470,000), (2) to pay off existing secured debt on the Hospitals ($4,550,000), (3) to finance PAC's purchase of a medical office building in Avoyelles Parish and PAC Dauterive's purchase of the Dauterive Hospital ($16,150,000) and (4) to provide PAC with an additional $2,530,000 line of credit for operations without a concomitant reasonably equivalent benefit to the Debtors in exchange for assuming such obligations.

- Breaches of fiduciary duties of loyalty, care and/or good faith, negligence, gross negligence, mismanagement, waste, and others, as well as for violations of state and federal securities laws including but not limited to Section 10(b) of the Securities Exchange Act of 1934.

- Failure to operate the Debtors in the best interests of the Debtors' creditors while the Debtors were insolvent.

- Failure to maintain corporate separateness of each of the Debtors and causing the commingling of the assets and liabilities of the Debtors.

- Wasting the Debtors' assets.

Due to the size and scope of the Debtors' business operations and the multitude of business transactions therein, there may be numerous other claims and Causes of Action that currently exist or may subsequently arise, in addition to the claims and Causes of Action identified above.  The Debtors and Committee are also continuing to investigate and assess which claims and Causes of Action may be pursued.  The Debtors, Liquidation Trustee, and Debtor Representative do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued or do not fall within the list above, that any such claims or Causes of Action have been waived.

**THIS PLAN SHALL BE INTERPRETED SO AS TO AFFORD, FOR THE BENEFIT OF ALL HOLDERS OF ALLOWED CLAIMS, THE GREATEST OPPORTUNITY FOR MAXIMUM RECOVERY BY THE LIQUIDATION TRUSTEE AND THE DEBTOR REPRESENTATIVE ON THE ASSETS, TORT CLAIMS, AND RIGHTS IN AND PROCEEDS OF ANY INSURANCE POLICIES**.

**6.4**      **Establishment of the Liquidation Trust and Appointment of the Liquidation Trustee.**

The Liquidation Trust shall be established and the Liquidation Trustee shall be appointed as set forth below in Article VII.

**6.5**      **Appointment of the Debtor Representative, Vesting of Authority in the Debtor Representative, and Revesting of the Tort Claims and Insurance Policies.**

On or before the Effective Date, a Debtor Representative shall be appointed pursuant to section 1123(b)(3) of the Bankruptcy Code.

On the Effective Date, the Debtors' boards of directors or trustees shall be dissolved and the then-current board members shall be relieved of their positions and corresponding duties and obligations and the Debtors' officers shall likewise be relieved of their positions and corresponding duties and obligations; provided, however, that the Debtor Representative shall be responsible for effectuating transfers of Assets in accordance with this Plan and otherwise satisfying the Debtors' obligations under the terms of this Plan, including executing and delivering all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and taking all necessary actions required in connection therewith, in the name of and on behalf of the Debtor.

On and after the Effective Date, the Debtor Representative shall have full and complete authority to act on behalf of and bind the Debtors without further action or approval of the Bankruptcy Court or the board of directors or trustees of any Debtor, including to take all steps necessary to wind down the affairs of the Debtors.

On the Effective Date, the Estates' interest in any Tort Claims and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Claims shall revest in the Debtors. The Debtor Representative shall have standing and be authorized to institute and prosecute through final judgment or settle the Tort Claims. Upon entry of a final judgment or settlement, the relevant proceeds of the Tort Claims and relevant Insurance Policies shall be transferred to the Liquidation Trust for the benefit of holders of Allowed claims in accordance with the provisions of this Plan. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise affect or other obligations of the Insurance Policies such that the full benefits of all such policies can be realized for Creditors herein.

After the Tort Claims are liquidated, the proceeds of Causes of Action are transferred to the Liquidation Trust in accordance with this Plan, and all other assets of the Liquidating Trust are administered, the Debtor Representative shall be empowered, but not directed, to effectuate the dissolution of the Debtors in accordance with any applicable state law.

**6.6     Sources of Cash for Plan Distributions.**

All Cash necessary to make payments and Plan Distributions under the Plan shall be obtained from the liquidation of Liquidation Trust Assets (including the proceeds of any Tort Claims and related Insurance Policies).

**6.7     Use of Existing Accounts.**

The Liquidation Trustee may use the Debtors' existing bank accounts (as of the Effective Date) for the purposes set forth in the Plan to the extent possible and desired.  The Liquidation Trustee may also close the Debtors' existing bank accounts at his discretion and transfer all amounts therein to one or more accounts in accordance with the terms of the Plan.

**6.8     Cancellation of Instruments.**

Except as otherwise provided herein, all notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligation of any Debtor shall be deemed cancelled on the Effective Date but only as to the Debtors themselves and Liquidation Trust.

**6.9     Dissolution of the Committee.**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee.

**ARTICLE VII.**

**THE LIQUIDATION TRUST**

**7.1     Establishment of Liquidation Trust.**

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purposes of administering the Liquidation Trust Assets and making all distributions to Liquidation Trust Beneficiaries as provided for under this Plan. The Liquidation Trust Agreement shall be substantially in the form provided in the Plan Documents.

The beneficial interests in the Liquidation Trust shall not be certificated, unless otherwise provided in the Liquidation Trust Agreement.  The issuance of any beneficial interests of the Liquidation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**7.2     Execution of the Liquidation Trust Agreement.**

The Liquidation Trust Agreement, in a form reasonably acceptable to the Debtors and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Liquidation Trust and the beneficial interests therein, which shall be for

the benefit of holders of Allowed Claims as set forth herein. This Article VII sets forth certain of the rights, duties and obligations of the Liquidation Trustee. In the event of any conflict between the terms of this Article VII and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern.

**7.3    Liquidation Trust Assets.**

7.3.1    On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the Liquidation Trust Assets (except the Tort Claims and the Debtors' interests in related Insurance Policies, which shall revest in the Debtors), as well as the rights, privileges (including, but not limited to, the attorney-client privilege), and powers of the Debtors and their Estates applicable to the Liquidation Trust Assets (except those applicable to the Tort Claims and related Insurance Policies), shall automatically vest in the Liquidation Trust, free and clear of all Claims and Equity Interests for the benefit of the Liquidation Trust Beneficiaries. For the avoidance of doubt, (i) in no event shall the term "Liquidation Trust Assets" be deemed to include any released claims against any Exculpated Parties, and (ii) the Liquidation Trust shall not have the right to assert any released claims against any Exculpated Parties. Upon the transfer of Liquidation Trust Assets to the Liquidation Trust, the Liquidation Trust shall succeed to all of the applicable Debtors' and Estates' rights, title and interest in such Liquidation Trust Assets, and the Debtors shall have no further interest in or with respect to such Liquidation Trust Assets.

Notwithstanding the foregoing, the Plan Proponents reserve the right to modify the Plan to exclude certain assets from transfer to the Liquidation Trust. The Confirmation Order shall constitute a determination that the transfers of Assets to the Liquidation Trust are legal and valid and consistent with the laws of the State of Louisiana.

All parties shall execute any documents or other instruments necessary to cause title to the Assets to be transferred to the Liquidation Trust. The Assets will be held in trust for the benefit of all holders of Allowed Claims pursuant to the terms of the Plan and Liquidation Trust Agreement.

7.3.2    As more fully set forth in Section 7.10 hereof, the transfer of each of the Liquidation Trust Assets to the Liquidation Trust shall be treated for U.S. federal income tax purposes as a transfer of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Liquidation Trust.

**7.4    Governance of Liquidation Trust.**

The Liquidation Trust shall be governed and administered by the Liquidation Trustee, with the advice and assistance of the Oversight Committee, as provided under this Plan and the Liquidation Trust Agreement. Notwithstanding anything to the contrary herein, the Oversight Committee shall act in furtherance of, and consistent with, the purpose of the Liquidation Trust and shall act in the best interests of the Liquidation Trust Beneficiaries.

**7.5    Liquidation Trustee.**

The Liquidation Trustee shall be authorized to exercise and perform the rights, powers, and duties held by the Debtors and the Estates with respect to the Liquidation Trust Assets upon their transfer to the Liquidation Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the Debtors and their Estates, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

      7.5.1     <u>Responsibilities of Liquidation Trustee.</u>

The responsibilities of the Liquidation Trustee shall include, but shall not be limited to: (a) prosecuting through judgment and/or settling the Liquidation Trust Assets and any defense asserted by the Liquidation Trust in connection with any counterclaim or crossclaim asserted against the Liquidation Trust; (b) calculating and making distributions required under the Plan to be made from the Liquidation Trust Assets; (c) filing all required tax returns, and paying obligations on behalf of the Liquidation Trust from the Liquidation Trust Assets; (d) otherwise administering the Liquidation Trust; (e) filing quarterly reports with the Bankruptcy Court with respect to the expenditures, receipts, and distributions of the Liquidation Trust; and (f) such other responsibilities as may be vested in the Liquidation Trustee pursuant to the Liquidation Trust Agreement, the Confirmation Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Liquidation Trust.

The Liquidation Trustee shall maintain good and sufficient books and records of account relating to the Liquidation Trust Assets, the management thereof, all transactions undertaken by the Liquidation Trustee, all expenses incurred by or on behalf of the Liquidation Trustee, and all distributions to Liquidation Trust Beneficiaries contemplated or effectuated under the Plan.  In addition, the Liquidation Trustee shall maintain the Debtors' organizational or corporate record books, minute books and tax records not sold to the Buyer under the Asset Purchase Agreement (the "Retained Records") until the dissolution of the Liquidation Trust, at which time the Retained Records may be disposed of in the Liquidation Trustee's discretion.

      7.5.2     <u>Authority and Powers of Liquidation Trustee.</u>

The powers of the Liquidation Trustee are set forth in full in the Liquidation Trust Agreement and shall include, among other things, the right, without any further approval from the Bankruptcy Court, to: (a) sell, lease, license, abandon or otherwise dispose of all Liquidation Trust Assets subject to the terms of this Plan; (b) invest the Liquidation Trust Assets in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, and withdraw funds of the Liquidation Trust for that purpose; (c) employ Persons to assist the Liquidation Trustee or the Debtor Representative in carrying out his duties under the Plan and Liquidation Trust Agreement; (d) pay from the Liquidation Trust Assets all obligations of the Liquidation Trust and all costs and expenses of administering the Liquidation Trust and Liquidation Trust Assets, including fees and expenses of the Liquidation Trustee, the Debtor Representative, and Persons employed by the Liquidation Trustee or the Debtor Representative in carrying out his duties under the Plan and Liquidation Trust Agreement, taxes, and other obligations of the Liquidation Trust; (e) implement the Plan,

including by making distributions pursuant to the Plan; (f) evaluate and determine strategy with respect to the Liquidation Trust Assets, and prosecute, compromise, release, abandon and/or settle or otherwise resolve any Liquidation Trust Assets, including any and all Avoidance Actions, Causes of Action, or other claims of the Debtors or their Estates except Tort Claims, which shall revest in the Debtors; (g) liquidate any Liquidation Trust Assets and provide for distributions therefrom in accordance with the provisions of the Plan; (h) otherwise administer the Liquidation Trust; (i) participate in any post-Effective Date motions to amend or modify this Plan or the Liquidation Trust Agreement, or appeals from the Confirmation Order; (j) participate in actions to enforce or interpret the Plan; (k) bind the Liquidation Trust; (l) administer the Wind-Down Amounts Reserve in order to pay any remaining Wind-Down Amounts pursuant to the terms of the Plan; (m) continue any motions, defenses, or appeals initiated by the Debtors or the Committee prior to the Effective Date relating to any Liquidation Trust Asset; (n) exercise such other powers and authority as may be vested in or assumed by the Liquidation Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Liquidation Trust; (o) dissolve the Liquidation Trust in accordance with Section 7.9 of the Plan; and (p) administer the closure of the Chapter 11 Cases.

The authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until all of the Assets have liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Cases is a Final Order.

7.5.3    <u>Liquidation Trustee as Successor in Interest to the Debtors and Committee</u>.

Except as to the Tort Claims, the Liquidation Trustee is the successor in interest to the Debtors and the Committee, and thus, after the Effective Date, to the extent the Plan requires an action by the Debtors (and except as it relates to the Tort Claims), the action shall be taken by the Liquidation Trustee on behalf of the Debtors or the Committee, as applicable.

7.5.4    <u>Retention of Professionals by Liquidation Trustee</u>.

As set forth in Section 7.5.2 of this Plan and the Liquidation Trust Agreement, the Liquidation Trustee may, without further order of the Bankruptcy Court, employ various Persons on behalf of the Liquidation Trust and Debtor Representative, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him/her in fulfilling his/her obligations under the Liquidation Trust Agreement and this Plan, and on whatever fee arrangement he/she deems appropriate, including, without limitation, contingency fee arrangements. For the avoidance of doubt, the Liquidation Trustee may retain professionals who represented parties in interest in the Chapter 11 Cases.

Professionals engaged by the Liquidation Trustee shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid from the Liquidation Trust with Liquidation Trust Assets. Notwithstanding the foregoing, all invoices for such Professionals will be submitted to the

Liquidation Trustee and the Oversight Committee for review prior to payment. If the Liquidation Trustee and a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If the Liquidation Trustee or a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

      7.5.5        <u>Compensation of Liquidation Trustee</u>.

In addition to reimbursement for actual out-of-pocket expenses incurred by the Liquidation Trustee, the Liquidation Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidation Trust on terms to be set forth in the Liquidation Trust Agreement, and all such compensation and reimbursement shall be paid from the Liquidation Trust using Liquidation Trust Assets and their proceeds. Like terms shall apply to the fees and expenses of the Debtor Representative.

All invoices for the Liquidation Trustee (or Debtor Representative) will be submitted to the Oversight Committee for review prior to payment. If a majority of the members of the Oversight Committee do not object to a submitted invoice, the invoice will be paid. If the a majority of the members of the Oversight Committee object to the invoice, the parties will work in good faith to resolve the objection. If the parties cannot resolve the objection, one or more of the parties may raise the dispute to the Bankruptcy Court for resolution.

**7.6**      **<u>Oversight Committee.</u>**

      7.6.1        <u>Appointment of the Oversight Committee</u>.

On the Effective Date, the Oversight Committee shall be formed. The Oversight Committee shall advise and assist the Liquidation Trustee in the implementation and administration of the Liquidation Trust pursuant to the Liquidation Trust Agreement and this Plan. A list of the proposed members of the Oversight Committee, whose appointment shall become effective as of the Effective Date of this Plan, shall be filed with the Bankruptcy Court as a Plan Document.

The Oversight Committee shall consist of not less than three (3) Persons that are Liquidation Trust Beneficiaries. The Oversight Committee may also include such other Persons (including ex officio members) as may be requested by the Oversight Committee, which Person shall have agreed to participate in the performance of the Oversight Committee's functions as set forth in the Plan. The members of the Oversight Committee shall serve without compensation, but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the Oversight Committee.

      7.6.2        <u>Duties of the Oversight Committee</u>.

The Oversight Committee shall have the functions, duties and rights provided in the Liquidation Trust Agreement. No other Liquidation Trust Beneficiary shall have any consultation rights whatsoever in respect of management and operation of the Liquidation Trust.

**7.7**     **Indemnification.**

From and after the Effective Date, the Liquidation Trustee, the Debtor Representative, the members of the Oversight Committee and all Persons retained by the Liquidation Trust (collectively, the "Liquidation Trust Indemnified Parties" and each a "Liquidation Trust Indemnified Party") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Liquidation Trust Indemnified Party's good faith exercise of what such Liquidation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Liquidation Trust Indemnified Party reasonably understands to be its duties conferred by the Liquidation Trust Agreement, the Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Liquidation Trust Assets, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) the Plan; (b) the Liquidation Trust Agreement; (c) the services to be rendered pursuant to the Plan or Liquidation Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee or Debtor Representative; or (e) proceedings by or on behalf of any creditor or Debtor. The Liquidation Trust shall, on demand, advance or pay promptly out of the Liquidation Trust Assets, on behalf of each Liquidation Trust Indemnified Party, reasonable and documented attorneys' fees and other expenses and disbursements to which such Liquidation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; provided, however, that any Liquidation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Liquidation Trust Indemnified Party is not entitled to indemnification hereunder due to the fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such Liquidation Trust Indemnified Party. In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the Liquidation Trustee, at the Liquidation Trust's expense, subject to the foregoing terms and conditions.

**7.8**     **LT Reserves.**

The Liquidation Trustee may establish one or more LT Reserves on account of Contested Claims, the holders of which would be Liquidation Trust Beneficiaries were such Contested Claims ultimately Allowed. The amount held back in the LT Reserve(s) shall be equal to the amount necessary to satisfy the Plan Distributions to which the holders of the relevant Contested Claims would be entitled if all such Contested Claims were to be subsequently Allowed.

**7.9**     **Discharge of Liquidation Trustee and Dissolution.**

The Liquidation Trustee and the Liquidation Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Liquidation Trust have been liquidated and (ii) all distributions required to be made by the Liquidation Trustee under the Plan have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidation Trust for a finite period if (i) such extension is necessary to the purpose of the Liquidation Trust, (ii) the Liquidation Trustee receives an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes, and (iii) such extension is obtained within the six (6) month period prior to the Liquidation Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Liquidation Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action will be distributed to the Liquidation Trust Beneficiaries in accordance with the Liquidation Trust Agreement. Upon the dissolution of the Liquidation Trust, all remaining Causes of Action shall be deemed void and abandoned and no Liquidation Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

At such time as the Liquidation Trust has been fully administered (i.e., when all things requiring action by the Liquidation Trustee – including the liquidation of all Liquidation Trust assets and the making of all distributions required under the Plan – have been done, and the Plan has been substantially consummated), the Liquidating Trustee shall file an application for approval of his final report and the entry of a final decree with the Bankruptcy Court.

**7.10    Taxes.**

For federal income tax purposes, (i) all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the Liquidation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, (ii) the transfer of Assets of the Debtors to the Liquidation Trust under the Plan shall be treated as a deemed transfer to the Liquidation Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the Assets by the Liquidation Trust Beneficiaries to the Liquidation Trust, (iii) the Liquidation Trust Beneficiaries will be deemed to be the grantors and owners of the Liquidation Trust and its assets, and (iv) the Liquidation Trust will be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the Liquidation Trust Beneficiaries. The Liquidation Trust will file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the Liquidation Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Liquidation Trust Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the Assets transferred to the Liquidation Trust for all federal income tax purposes. The Assets shall be valued based on the Liquidation Trustee's good faith determination of their fair market value.

The Liquidation Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the LT Reserve(s) as a "disputed ownership fund"

within the meaning of that section, (ii) allocate taxable income or loss to the LT Reserve(s), with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the LT Reserve(s) as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved. The Liquidation Trust Beneficiaries shall be bound by such election, if made by the Liquidation Trustee, in consultation with the Oversight Committee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfers of Assets to the Liquidation Trust in accordance with the terms of the Plan as a sale by the Debtors and/or their Estates of such Assets to the Liquidation Trust at a selling price equal to the fair market value of such Assets on the date of transfer. The Liquidation Trust shall be treated as the owner of all Assets that it holds.

For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest and other fees, premiums and charges, as applicable.

## ARTICLE VIII.

## INJUNCTIONS, EXCULPATION AND LIMITATION ON LIABILITY

### 8.1    Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors or the Estates are, with respect to any such Claims or Equity Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Estates or any of their Assets, the Liquidation Trust, or any successor to any of the foregoing Persons or any property of any such successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Estates or any of their Assets, the Liquidation Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iii) creating,

perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Estates or any of their Assets, the Liquidation Trust, or any successor to any of the foregoing Persons or any property of any such successor; (iv) commencing or continuing in any manner or in any place, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, satisfied, or otherwise addressed pursuant to the Plan or the Confirmation Order, including, but not limited to, through the releases and exculpations provided under the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan. Each holder of an Allowed Claim or Allowed Equity Interest shall be deemed to have specifically consented to the injunctions set forth herein.

The foregoing injunctions shall extend for the benefit of the Debtor Representative, the Liquidating Trustee, and any successors of the Debtors, and to any property and interest in property subject to this Plan.

Notwithstanding the foregoing injunctions, any Person holding a professional liability claim that is subject to Section 9.10(c) of this Plan shall be entitled to name any applicable Debtor as a defendant or potential defendant in any proceeding before the Louisiana Patient's Compensation Fund Medical Review Panel or in any lawsuit concerning such professional liability claim. For avoidance of doubt, although such Persons shall be entitled to maintain a legal action against a Debtor as set forth in this paragraph, pursuant to Section 9.10(c) of this Plan, such Persons shall be barred from receiving any distribution under this Plan or otherwise from the Debtors, the Liquidating Trust, the Debtors' Estates, or the Liquidating Trust Assets.

**8.2**   **Injunction.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATIONS GRANTED IN THIS PLAN, THE DEBTORS AND ALL PARTIES IN INTEREST SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**8.3**   **Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action or liability for any claim in connection with or arising out of, the administration of the Chapter 11 Cases, entry into the Liquidation Trust Agreement, entry into the Settlement Agreement, the Debtors' entry into any

asset purchase agreement during the Chapter 11 Cases, the consummation of any transactions contemplated therein, the negotiation and pursuit of this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, and the issuance of securities under or in connection with this Plan or the transactions contemplated by the foregoing, except for willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of any securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder.

**8.4    Limitation on Liability of Liquidation Trustee and Debtor Representative.**

Neither the Liquidation Trustee or the Debtor Representative will be liable for any act he may do or omit to do as Liquidation Trustee or Debtor Representative under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will the Liquidation Trustee or the Debtor Representative be liable in any event, except for willful misconduct, gross negligence, or intentional fraud. The foregoing limitation on liability will also apply to any Person (including any professional) employed by the Liquidation Trustee or the Debtor Representative and acting on behalf of the Liquidation Trustee or Debtor Representative in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement.

**8.5    D&O Claims and D&O Policies.**

For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Plan, including this Article VIII, no release, exculpation, injunction, or waiver set forth in this Plan shall apply to any D&O Claims (or claims relating to any D&O Policies) belonging to or pursuable by the Debtors, the Debtor Representative, or the Liquidation Trust or Liquidation Trustee, and all such claims and related Causes of Action are expressly reserved and preserved as set forth in Section 6.3 above.

## ARTICLE IX.

## PLAN DISTRIBUTION PROVISIONS

**9.1    Plan Distributions.**

The Liquidation Trustee shall make all Plan Distributions in accordance with the Plan and the Liquidation Trust Agreement. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed

Claims as reflected in the registry of claims maintained by the Debtors or the Liquidation Trustee on the Effective Date. **NO DISTRIBUTION SHALL BE MADE PURSUANT TO THIS PLAN TO A HOLDER OF A CLAIM UNLESS AND UNTIL SUCH CLAIM IS OR BECOMES AN ALLOWED CLAIM.** The Liquidation Trustee and its agents may, but shall have no obligation to, recognize any transfer of a Claim after the Effective Date.

**9.2    Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**9.3    Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions.**

9.3.1    Delivery of Plan Distributions in General. Subject to Bankruptcy Rule 9010, any Plan Distribution to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of transfer of claim filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (iv) in any notice served by such holder giving details of a change of address.

9.3.2    Undeliverable and Unclaimed Plan Distributions.

a.    General. The Liquidation Trustee shall have no duty to make distributions to any holder of an Allowed Claim with an undeliverable address as determined by any undeliverable or returned notice to the Liquidation Trustee unless and until the Liquidation Trustee is notified in writing of such holder's then-current address prior the Plan Distribution Date. If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or is otherwise unclaimed, no further Plan Distribution shall be made to such holder unless the Liquidation Trustee is notified of such holder's then-current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the other holders of Allowed Claims in such holder's Class shall receive a Pro Rata Share of such undeliverable or unclaimed Plan Distribution, free of any restrictions thereon.

b.    Non-Negotiated Checks. Checks issued in respect of Allowed Claims shall be null and void if not presented within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claim in respect of such voided check shall be discharged and forever barred and the other holders of Allowed Claims in such holder's Class shall receive a Pro Rata Share of such undeliverable Plan Distribution, free of any restrictions thereon.

**9.4    Plan Distributions Subject to Withholding and Reporting Requirements.**

All Plan Distributions hereunder shall be subject to all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution. The Liquidation Trustee has the right to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Liquidation Trustee for payment of any such tax obligations, including, without limitation, the provision by the holder of a Claim IRS Form W-9 and any other information determined by the Liquidation Trustee to be necessary or appropriate to effect information reporting and tax withholding. If the Liquidation Trustee has not received IRS Form W-9 or other requested tax reporting information from the holder of a Claim before the relevant Plan Distribution Date, any property or Cash to be distributed pursuant to this Plan shall, pending receipt of IRS Form W-9 or such other requested information, be treated as an unclaimed distribution under this Plan, as set forth in Section 9.3.2.

## 9.5    Manner of Payment Under the Plan.

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 9.6    Minimum Distributions.

If the amount of Cash to be distributed to the holder of an Allowed Claim is less than fifty dollars ($50.00) on a Plan Distribution Date, the Liquidation Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50. Notwithstanding the preceding sentence, if the amount of Cash distribution to any Holder of an Allowed Claim never aggregates more than $50, then the Liquidation Trustee shall not be required to distribute Cash to any such holder, and the resultant funds shall revert to the Liquidation Trust and distributed Pro Rata to other holders of Allowed Claims.

## 9.7    Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

## 9.8    Settlement of Claims and Controversies.

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the

compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and is fair, equitable and reasonable.

**9.9**     **Setoffs and Recoupments.**

The Liquidation Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim) of the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claims, rights and causes of action that the Liquidating Trust may possess against such holder.

**9.10**     **Claims Paid or Payable by Third Parties.**

(a)     Claims Paid by Third Parties

The Debtors shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the Liquidation Trust to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim. Notwithstanding the foregoing, and for the avoidance of doubt, any Claim that is subject to Section 9.10(c) below shall be reduced in full by the Debtors and Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

(b)     Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable by a third party, including pursuant to one of the Debtors' Insurance Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or Insurance Policy. To the extent that one or more of the Debtors' insurers or another third party agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court. Notwithstanding the foregoing, and for the avoidance of doubt, any Claim that is subject to Section 9.10(c) below shall be reduced in full by the Debtors and Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

(c)     Claims Assumed Under the Asset Purchase Agreement

The Debtors shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that such Claim is an Assumed Liability (as defined in the Asset Purchase Agreement) under the Asset Purchase Agreement, including all Assumed Liabilities set forth in Section 2.3 of the Asset Purchase Agreement. Holders of such Claims shall not be entitled to any distribution under this Plan on account of such Claims.

**ARTICLE X.**

**PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**

**10.1    Claim Objection Deadline.**

Objections to Claims shall be filed by the Liquidation Trustee with the Bankruptcy Court and served upon the holders of each of the Claims to which objection is made within 180 days after the Effective Date of this Plan. The time period for filing objections to Claims shall automatically renew for successive periods of 180 days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Court upon motion of the Liquidation Trustee or a holder of a Claim.

**10.2    Prosecution of Contested Claims.**

After the Effective Date, the Liquidation Trustee may (i) prosecute any objection to a Claim filed by the Debtors prior to the Effective Date and (ii) object to the allowance of Claims filed with the Bankruptcy Court before, on or after the Effective Date with respect to which liability is Contested. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

**10.3    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Liquidation Trustee shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**10.4    Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, except as otherwise agreed by the Liquidation Trustee, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 9.9. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**10.5    Estimation of Claims.**

The Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Liquidation Trustee or the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

**11.1    Conditions Precedent to Confirmation.**

The following shall be conditions precedent to confirmation of the Plan:

(a)    the Bankruptcy Court shall have entered an Order or Orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan, (vii) approving the Plan Documents and (viii) authorizing the Debtors to execute, enter into and deliver the Plan Documents, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer or revesting of Assets contemplated by the Plan and the Plan Documents;

(b)    the Confirmation Order, the Plan Documents and the Plan are each in a form and substance satisfactory to the Debtors and the Committee; and

(c)    the Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**11.2    Conditions Precedent to the Occurrence of the Effective Date.**

The following shall be conditions precedent to the occurrence of the Effective Date with respect to each of the Debtors' Estates:

(a)    the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction, and the Debtors shall not have

elected to delay the occurrence of the Effective Date with respect to such Estate in accordance with Section 11.5 of this Plan;

(b)     the Liquidation Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)     the Liquidation Trust shall have been established; and

(d)     all necessary consents, authorizations and approvals shall have been given for the transfers or revestings of property and the payments provided for or contemplated by the Plan and the Plan Documents, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

## 11.3    <u>Waiver of Conditions.</u>

The Debtors, in consultation with the Committee, may waive any one or more of the conditions set forth in Section 11.1 or Section 11.2 in a writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.

## 11.4    <u>Effect of Non-Occurrence of the Effective Date.</u>

If the Effective Date shall not occur (except as provided in Section 11.5 hereof), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, including, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

## 11.5    <u>Option to Delay Occurrence of the Effective Date.</u>

Notwithstanding the foregoing or anything in the Plan to the contrary, the Debtors, in consultation with the Committee, reserve the right to delay the occurrence of the Effective Date with respect to one or more of the Debtors' Estates to a later date; provided, however, that any such election by the Debtors to delay the occurrence of the Effective Date with respect to one Estate shall not prevent the occurrence of the Effective Date with respect to any of the other Estates.

## ARTICLE XII.

## <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

## 12.1    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u>

(a)     On the Effective Date, except to the extent inconsistent with Section 14.5, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume or assume and assign

filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of the Confirmation Order; (ii) contracts and leases that were assumed and assigned to the Buyer by Order of the Bankruptcy Court before the entry of the Confirmation Order; (iii) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; and (iv) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtors. Any Order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.

(b)      Receipt of this Plan by the counterparties to the executory contracts and unexpired leases of the Debtors rejected pursuant to Section 12.1(a) shall constitute adequate and sufficient notice that (i) any Claims arising under the contract, lease or other agreement or related thereto shall be treated under the Plan as General Unsecured Claims as against the respective Debtor that was a party to the contract, lease or other agreement, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

(c)      The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their estates.

(d)      Notwithstanding the rejection of any of the Debtors' executory contracts under this Plan or by separate motion, the Debtors or the Liquidation Trustee, as applicable, shall retain and be entitled to enforce any warranties provided to, or for the benefit of, the Debtors under applicable federal or state law; provided, however, for the avoidance of doubt, that the foregoing does not include any warranties provided to, or for the benefit of, the Debtors pursuant to any contract that has been assumed and assigned by order entered by the Bankruptcy Court on or before the Effective Date.

**12.2    Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date. **Any such Claims for which a proof of claim is not filed and served by the deadlines set forth above will be forever barred from assertion and shall not be enforceable against the Debtors, their Estates or their Assets**. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection by the Liquidation Trustee.

# ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan or (c) that relates to the following:

(i)     to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which any Debtor is a party or with respect to which a Debtor may be liable;

(ii)     to hear and determine any and all Claims and any related disputes, including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease;

(iii)     to determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trustee after the Effective Date;

(iv)     to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(v)     to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(vi)     to consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vii)     to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(viii)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, the Liquidation Trust Agreement, and any other Plan Documents or their interpretation, implementation, enforcement or consummation;

(ix)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(x)    to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Dates, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose;

(xi)    to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estates;

(xii)    to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xiii)    to hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Debtors may be liable in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiv)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtors, Liquidation Trustee or any Person under the Plan;

(xv)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action of the Debtors (including Avoidance Actions) commenced by the Liquidation Trustee, the Debtors, the Debtor Representative, or any third parties, as applicable, before or after the Effective Date;

(xvi)    to enter an order or final decree closing the Chapter 11 Cases;

(xvii)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xviii)  to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1    Lead Debtor Name and Case Name

On the occurrence of the Effective Date, PAC shall be known as "PAC Liquidation Company" for the purposes of the Chapter 11 Cases, the Chapter 11 Cases' name and heading shall be changed accordingly, and the Clerk of the Court is directed to take any action necessary to cause the Bankruptcy Court docket to reflect such changes.

### 14.2    Satisfaction of Claims.

(a)     Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, the distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtors, and in satisfaction of all Equity Interests.  Except as otherwise specifically provided in the Plan, as of the Effective Date any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled.

(b)     Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtors, the Liquidation Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date, including any Claims or Equity Interests that are not placed in a Class under the Plan.

(c)     No Person holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to that Person under the Plan.

**14.3     Special Provisions Regarding Insurance Policies and Insured Claims.**

14.3.1     Insurance Policies.  For the avoidance of doubt, the Debtors' and Estates' rights with respect to all Insurance Policies (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtors after the Petition Date, and all Insurance Policies under which any of the Debtors holds rights to make, amend, prosecute and benefit from claims) shall revest in the Debtors and/or Debtor Representative as necessary to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action, all the Debtors' and Estates' rights with respect to such Insurance Policies shall be transferred to the Liquidation Trust from the Effective Date until its dissolution.

Notwithstanding anything to the contrary in the Plan, any Insurance Policy in effect as of the Effective Date shall continue in effect after the Effective Date pursuant to its terms and conditions.  Nothing in the Plan shall relieve any insurer from performing its obligations under the Insurance Policies, regardless of whether such obligations arise prior to or after the Effective Date.

Notwithstanding any default by the Debtors with respect to any of the Insurance Policies, nothing in the Orders approving the Asset Sale, any underlying agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any claims or Causes of Action.  The Plan shall be liberally construed to protect the interests of all creditors in all Causes of Action and to limit any Claims against the Estates.

14.3.2     Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy.  Insured Claims are not classified and, pursuant to Section 9.10(b), are not entitled to any distributions under the Plan until the relevant holder has exhausted all remedies with respect to

the applicable Insurance Policy. To the extent an Insured Claim is not satisfied in full from the proceeds of the applicable Insurance Policy, any Claim remainder shall be classified in the applicable Class under the Plan and, if allowed, treated in accordance with the treatment of Claims in that Class under the Plan. Nothing in this Section 14.3.2 shall constitute a waiver of any claim, right or cause of action the Debtors or their Estates may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which any Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**14.4    Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise compromised and settled pursuant to the Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtors or the Liquidation Trustee to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim or subordinated Equity Interest.

**14.5    Service of Documents.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtors:

> **STEFFES VINGIELLO & McKENZIE, LLC**
> 13702 Coursey Blvd., Bldg. 3
> Baton Rouge, Louisiana 70817
> Attn: William E. Steffes

if to the Committee:

> **SILLS CUMMIS & GROSS P.C.**
> One Riverfront Plaza
> Newark, NJ 07102
> Attn: Andrew H. Sherman

and

**KEAN MILLER LLP**
400 Convention Street, Suite 700
P.O. Box 3513 (70821-3513)
Baton Rouge, LA 70802
Attn: J. Eric Lockridge

## 14.6   Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

## 14.7   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

## 14.8   Exemption from Transfer Taxes.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.  Transfers made under the Plan include, without limitation, any transfer, sale or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before or after the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale or exchange closes.  To effectuate the terms of this Section, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

## 14.9   Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing rejection damage Claims.

## 14.10   Interest and Attorneys' Fees.

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or

related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**14.11**   **Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors, with the prior written consent of the Committee, at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors, with the prior written consent of the Committee, may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**14.12**   **Revocation of Plan.**

The Debtors reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.  If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtors or to prejudice in any manner the rights of the Debtors or any other Person in any other further proceedings involving the Debtors.

**14.13**   **Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Liquidation Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities.

**14.14**   **Binding Effect.**

The Plan shall be binding upon the Debtors, the Buyer, the holders of all Claims and Equity Interests, parties in interest, Persons and their respective successors and assigns.  Except as specifically provided in the Plan, to the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**14.15**   **Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such

Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

## 14.16 Nondischarge of the Debtors.

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims. However, no holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that holder pursuant to the Plan.

**As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

## 14.17 Extensions of Time.

For cause shown, any deadlines herein which are applicable to the Debtors, their Estates, or the Liquidation Trust and which are not otherwise specifically extendable as provided in the Plan may be extended by the Bankruptcy Court.

## 14.18 No Admissions.

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PROCEEDINGS CONCERNING CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS IN THE CHAPTER 11 CASES.**


Dated: March 14, 2017

Respectfully submitted,

PROGRESSIVE ACUTE CARE, LLC, on behalf of itself and each of the other Debtors

By: _____
Name: _____
Title: _____

-and-

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
PROGRESSIVE ACUTE CARE, LLC, ET
AL.

By: /s/ Christopher Lehmann
Name: Christopher Lehmann, Chairperson